[Civ. No. 3413.  First Appellate District, Division One.—August 30, 1920.]

## ANNA B. MOORE et al., Appellants, v. BELLE O. FRANKLIN et al., Respondents.

[1] APPEAL — INSUFFICIENCY OF EVIDENCE — ABSENCE OF SPECIFICA-
TIONS.—Where an appeal from a judgment is taken on a bill of exceptions and in the bill the ' appellants fail to specify wherein the findings are unsupported by the evidence, the point that the evidence is insufficient to support the decision cannot be raised; and this same rule applies to an order denying a new trial.

[2] ID.—SPECIFICATIONS IN NOTICE OF MOTION FOR NEW TRIAL—WHEN
INSUFFICIENT.—The appellants having in their bill of exceptions failed to specify wherein the findings are not supported by the evidence, their position is not bettered by their act in undertaking to specify in their notice of motion for a new trial wherein the evidence preponderates in favor of certain allegations of their complaint against which the court found, where that notice, while a part of the record on appeal by the certificate of the clerk, is no part of the bill of exceptions and is not incorporated in or referred to by such bill.

[3] Evidence—Conflicting Claims to Real Property—Fraudulent Representations—Findings.—In this action concerning an escrow agreement involving an interest in real estate and in the proceeds of sales under said agreement, the findings of the trial court against the making of false and fraudulent representations alleged to have been made by one of the defendants and that the plaintiffs were the owners of an undivided one-fourth interest in the property, and not an undivided three-fifths interest as alleged in their complaint, were supported by the evidence.

[4] Id.—Uncertainties and Inconsistencies in Decrees and Deeds —Explanation by Parol Evidence.—Under the circumstances of this case, there having existed a fiduciary relation not only in blood but in a business way, between the defendants and their brother, to whose title plaintiffs succeeded, and the defendant, who was the surviving trustee under a trust created by the will of their common predecessor, having been charged by the plaintiffs with making fraudulent representations concerning the interest of such brother, parol evidence was properly admitted to explain the whole transaction and the uncertainties and inconsistencies revealed by the decrees of distribution of the estates through which the several parties traced their respective titles and the several deeds which had been executed for the purpose of terminating the trust created by the will of their common·predecessor.

APPEAL from a judgment of the Superior Court of Santa Barbara County. S. E. Crow, Judge. Affirmed.

The facts are stated in the opinion of the court.

Balaam, Balaam & Garnett and B. F. Thomas for Appellants.

William G. Griffith and Robert M. Clarke for Respondents.

WELCH, J., *pro tem.*—Action concerning an escrow agreement involving an interest in real estate and in the proceeds of sales under said agreement. The facts had better be stated chronologically.

In December, 1893, Agnes B. Oglesby died testate in the city of Santa Barbara. She left a large estate, a part of which was block 70½ of land in the city of Santa Barbara.

---

4. General rule that parol evidence not admissible to vary, add to, or alter the terms of a written instrument, notes, 56 Am. St. Rep. 659; 17 L. R. A. 270.

She had five children, three daughters and two sons. To each of the three daughters she gave an undivided one-fifth interest in and to said block of land and the other two-fifths she willed to two of her daughters in trust for her two sons, D. F. Oglesby and A. A. Oglesby. The names of the trustees were Belle O. Franklin, a defendant, and Frances W. Oglesby, since deceased. Each of the sons was to have an undivided one-fifth interest in the residue of said estate, which included said block. The terms of the trust are not stated, and the will is not brought up in the record. The block was distributed "in accordance with the ninth paragraph of said will" in September, 1895.

Just before the mother's death she called the two trustees, her daughters, to her and told them that she was going to dispose of her property by deeds instead of by will and that the trust features in the will regarding her two sons must be released. She instructed her attorney to draw up deeds to that effect. She died, however, before her purpose was consummated. A. A. Oglesby was then city attorney of Santa Barbara. This fact was stated by the mother as a reason for releasing the trust. Soon after the distribution of the mother's estate, under the terms of the will, the trustees and beneficiaries agreed to deed back and forth like they had done in the matter of the estate of their father and thereby straighten out the title and do away with the trust.

On November 6, 1895, two months after the distribution of their mother's estate, the trustee sisters and their brothers agreed orally to end the trust according to their mother's wish. D. F. Oglesby, unskilled in conveyancing, drafted the two deeds with the aid of his brother, A. A. Oglesby. These two deeds are dated November 6, 1895. They are grant, bargain, and sale deeds and each recites a consideration of two thousand dollars. Both of these deeds are signed by the sisters. They contain no recital of the trust. One deed is to Gideon E. Franklin, Jr., and described some of the residue of the property distributed to the grantors to be held by them in trust for A. A. Oglesby under his mother's will, but not all of it. Nor does the deed correctly describe the interest which he was to receive in some of the property. It did, however, describe an undivided one-fifth part in block 70½ of the city of Santa Barbara. This deed was acknowledged November 9th and recorded at the request of A. A.

Oglesby, December 3d. The other deed is to Edwards Franklin and describes some property that does not appear in the decree of distribution of the mother's estate, but does contain a description of a block which was distributed to the grantors in trust for D. F. Oglesby. Like the other deed above mentioned, the interest in some of the property therein described did not correspond to those of the decree of distribution in said estate. This deed, however, contained a description of an undivided one-fifth interest in said block 70½, but differed slightly from the description of the deed to Gideon from the trustees. This deed to Edwards was not acknowledged until March 23, 1896, and was recorded at the request of D. F. Oglesby, April 10, 1896, three months after the transaction herein involved. These are the only deeds of conveyance shown to have been made by Belle O. Franklin and Frances W. Oglesby. It is evident on its face, taken in connection with the decree of distribution creating the trust, that the deed recorded by D. F. Oglesby was intended by the grantors and beneficiaries as an execution of the trust in favor of D. F. Oglesby. The grantors had no interest in some of the property therein conveyed, and neither had A. A. Oglesby. It should be stated that by the agreement of all the parties these deeds were to be made to Franklin, a relative, for the purpose of his conveying to the brothers the respective properties conveyed to him. Gideon E. Franklin, Jr., and Edwards Franklin is one and the same.

On December 3d, the day A. A. Oglesby recorded the deed above mentioned from the sisters to Gideon E. Franklin, Jr., he also recorded another deed from Gideon to himself of the same property. Again, on December 9th Gideon, by and in the name of Edwards Franklin, made another deed to A. A. Oglesby in which deed the same property which the trustees had conveyed to him and which he had deeded to A. A. Oglesby by deed dated six days before, was described, with one important change, of course, and some minor changes of the spelling of Spanish names of streets. This last-named deed was made to correct the grantor's former deed of a few days before. This fact was established not only by the testimony of the surviving trustee, but by the internal evidence found in said deeds and decree of distribution. What became of D. F. Oglesby's interest we are not informed, nor are we concerned with it. His interest is

thus far traced to the extent of the record to show that the deed he recorded was meant for him and no part of it for his brother A. A. Oglesby.

A. A. Oglesby died about two years after receiving and recording the three deeds above mentioned, one from his sisters to Gideon, one from Gideon to himself, and another from Edwards to himself, all describing the identical property with some differences in description and spelling above noted. A. A. Oglesby's heirs were plaintiffs herein, Mildred, his wife, and Anna B. and Frances, his daughters. His estate was administered and his interest in said block 70½ was inventoried and distributed as an undivided one-fifth interest therein. Before his death A. A. Oglesby dealt with his interest in said block as an undivided one-fifth interest only, as his heirs did from the time of his death down to the time of the commencement of this action.

After their father's death, and long before the bringing of this suit, Frances W. Oglesby, who was one of the trustees above mentioned, died, and her estate was probated. The one-fifth interest which was inherited from her mother, Agnes B. Oglesby, and which interest was distributed to her under her mother's will, was administered upon and one-fourth of this one-fifth interest was distributed to the two daughters of A. A. Oglesby, who are plaintiffs herein. If Frances W. Oglesby had parted with her individual interest in said block 70½, as claimed by appellants, by the deeds above mentioned, instead of the interest she held in trust for A. A. Oglesby, then she would not have had any interest in said block at the time of her death. This is conceded by counsel for appellants in their brief. Yet, these plaintiffs took by distribution from their aunt's estate an undivided one-fourth interest in the estate's one-fifth interest in said block, the very property which they now claim the aunt parted with to the father twenty-five years ago.

Believing that they owned the undivided one-fifth interest administered in their father's estate and the one-twentieth interest received from their Aunt Frances' estate, the two daughters of A. A. Oglesby, plaintiffs herein, in February, 1915, joined with their two living aunts in signing the escrow agreement to sell said block 70½. After this agreement had been placed in the Santa Barbara County Na-

tional Bank, as an escrow holder, and after it had been partially executed by a sale of several lots of the block, plaintiffs brought this suit for an adjudication that instead of being the owners of an undivided one-fourth part of said block, they are the owners of an undivided three-fifths of said block and are therefore entitled to three-fifths of the proceeds of the sale of said block, instead of one-fourth only. And this is the way they arrive at their interest: Belle O. Franklin and Frances W. Oglesby held an undivided one-fifth part in said block 70½ in trust for their father, which trust they assert has never been executed, and which interest went to them on the death of their father; the other two-fifths they claim was received one-fifth from Gideon E. Franklin, Jr., to their father, and the other one-fifth from Edwards Franklin to their father, making three-fifths owned by him at the time of his death instead of the one-fifth administered upon. They fortify this plausible claim by maintaining that the written evidences of their title are ''clear in meaning and intent and do not require extraneous testimony to add to or detract from the terms of the deeds, in order to make their parts clear and any extraneous testimony which may have been introduced upon the trial for that purpose is irrelevant, incompetent and immaterial.''

In their complaint plaintiffs allege that they were the owners of an undivided three-fifths interest in and to said block 70½. The court found that they were and are the owners of an undivided one-fourth interest only, the same being the proportional claim of the proceeds of the sale as set forth in the escrow agreement.

[1] Appellants chose to appeal on a bill of exceptions. In the bill they failed to specify wherein the findings are unsupported by the evidence. They also moved the court for a new trial and in their amended notice of motion they made certain specifications wherein they claim that by a preponderance of evidence they had established certain facts opposite to those found by the court. The bill of exceptions purports to set forth the' evidence adduced at the trial, but contains no specifications whatever. This being the state of the record the point made by appellants that the evidence is insufficient to support the decision cannot be raised here. ''No particular form of exception is required, but when the

exception is to the verdict or decision upon the ground of
insufficiency of the evidence to justify it, the objection must
specify the particulars in which such evidence is alleged
to be insufficient.'' (Sec. 648, Code Civ. Proc.) And this
same rule applies to an order denying a new trial. (*Hawley*
v. *Harrington,* 152 Cal. 188, [92 Pac. 177].) **[2]** Nor have
appellants bettered their condition by undertaking to
specify in their notice of motion for a new trial wherein
the evidence preponderates in favor of certain allegations
of their complaint against which the court found; for that
notice, while a part of the record on appeal by the certifi-
cate of the clerk, is no part of the bill of exceptions nor is
it incorporated in or referred to by such bill. (*Sprigg* v.
*Barber,* 122 Cal. 573, [55 Pac. 419] ; *Carver* v. *San Joaquin
Cigar Co.,* 16 Cal. App. 761, [118 Pac. 92].)

The bill of exceptions does not contain any particular
specifications of errors. It does, however, contain excep-
tions to certain rulings of the trial court. These rulings
more or less involved the question of the sufficiency of the
evidence to support the findings. **[3]** We shall consider
these rulings and in doing so have examined the record and
have concluded the findings of the court are supported by
the evidence.

The complaint alleged that soon after the death of the
father of said plaintiffs the defendant, Belle O. Franklin,
falsely and fraudulently represented to these two plaintiffs
that they each owned a one-eighth part or interest only in
said block of land. The court found that said defendant
made no false or fraudulent representations whatever to said
plaintiffs or either or any of them.

Appellants point out in their opening brief no particular
exception to any oral testimony introduced or adduced con-
cerning the deeds upon which they rely to establish their
claim of title. In their brief they state generally that the
language in the deeds is clear, the intent of the parties is
fully expressed, and that parol evidence upon the hearing
was not admissible to prove that the parties intended some-
thing different from what the language of the deeds them-
selves expressed. Dealing with the objections in the same
general way as presented in the opening brief of appellants,
suffice it to state generally what occurred on the trial of

this branch of the case. The court sustained objections of appellants to questions put to the surviving trustee, Belle O. Franklin, asking her the occasion of making the deeds and what were their consideration. Afterward witness was allowed to testify over the objection of plaintiffs as to the circumstances of the making of the deeds. Without objection, however, witness was allowed to testify that the deeds at first "did not make title" and in making other conveyances she "was simply conveying a one-fifth interest to correct a mistake in the first deed."

"Q. What one-fifth interest were you conveying to your brother, A. A. Oglesby?

"A. An undivided one fifth in block 70½."

She further testified without objection that the conveyances were made to Franklin so that A. A. Oglesby, her brother, should have the property absolutely divested of the trust. What trust did she refer to, was asked her without objection.

"A. It was the trust clause in the will my mother made leaving brother Gus' [A. A. Oglesby] property in trust to sister Fannie [Frances] and myself.

"Q. Now, is that the property you were conveying?

"A. That one-fifth interest undivided one-fifth."

But if there was any doubt surrounding the transaction between the witness and her cotrustee and the father of said plaintiffs, it was cleared up on cross-examination of the witness. Under a wide range of examination she explained in detail the transaction, the intention of the parties, the object of the deeds and the interests and estates they conveyed. For example:

"Q. Have you ever signed any deeds as trustee to this property yourself?

"A. As trustee?

"Q. Yes.

"A. I made a deed to my brother to release his property from this trust. . . .

"Q. Now, when you deeded this one-fifth, Mrs. Franklin, did I understand you to say you were deeding the trust interest?

"A. Absolutely.

"Q. You were acting as trustee at the time?

"A. No, I was releasing myself. My mother had asked me to do it. . . .

"Q. You were then attempting to destroy the trust?

"A. Of course I was, Mr. Balaam. I was trying to give my brother his property. That was my only endeavor.

"Q. You were trying to give your brother his property by deeding that property to Gideon Franklin; was that the idea?

"A. It was only a vehicle. . . .

"Q. Then you had an understanding with Gideon Franklin that you were going to destroy the trust?

"A. I will tell you, Mr. Balaam, I did not make these deeds. My brother D. F. Oglesby said, 'Now I will make the deeds, and Gus will help me in his office.' Our friendship was perfect, our confidence was absolute in each other. They made these deeds and I signed them, and it was signed for that one purpose alone. Brother Gus never bought that property. He didn't pay taxes on it, and the heirs didn't pay. . . .

"Q. When you made this deed to Gideon Franklin, you mean to say you and your sister made it as trustees under the will of your mother?

"A. We made it to release, so he would have it entirely and it could be at his absolute use and disposal. . . .

"Q. You gave it to him under this deed [deed to Gideon], you got no consideration for it?

"A. No, I did not; I did not get a thing."

And on direct examination, without objection, this question was asked and this answer given in regard to the other trustees receiving a consideration for the deed:

"Q. Did she receive any consideration?

"A. She did not."

The foregoing excerpts from the testimony, taken in connection with the decrees of distribution and the deeds in evidence, clearly show, exclusive of the testimony received over the objections of appellants, that A. A. Oglesby, at the time of his death, owned an undivided one-fifth part only of said block 70½. Mrs. Franklin and her sister received, to hold in trust, two-fifths only of said block for their two brothers. The decree distributed this interest to them in their individual names. They parted with but two-fifths interest in

said block by said deeds.  The deed which went to Edwards Franklin must be eliminated from consideration for it dealt with property, or at least some property, which belonged individually and exclusively to D. F. Oglesby.  The court had a right to disregard it.  The record shows that D. F. Oglesby drafted the deed and as late as April 10, 1896, he still had it in his possession.  When Gideon Franklin under the name of Edwards Franklin made his second deed on December 9, 1895 (a duplicate of his first deed to A. A. Oglesby), there is no evidence that the deed recorded by D. F. Oglesby at a later date had been delivered or was in effect on December 9, 1895, or has ever been delivered to the grantee, Edwards Franklin, or ever was vitalized.  The other deed to Gideon was a deed by the trustees conveying to the grantee for A. A. Oglesby the one-fifth interest in said block, which interest was then held in trust for "Gus." The first deed from Gideon to A. A. Oglesby was found defective and Gideon thereupon promptly made another deed to A. A. Oglesby of the same identical property described in his first deed.  He executed it by and in the name by which he was commonly known.

[4]  Nor do we refrain from holding that under the circumstances of the case, parol testimony was admissible to explain the whole transaction as revealed by the decrees of distribution of the three estates and the four deeds introduced in evidence by plaintiffs.  There existed a fiduciary relation between sisters and brothers, not only in blood, but in a business way.  Besides the complaint charged that the defendant, Belle O. Franklin, the surviving trustee, had been guilty of fraud in certain representations concerning this very one-fifth and alleged three-fifths interest in said block.  Certainly it is not the law under such circumstances that she must sit silently by and not be allowed to orally explain a transaction which on the face of the written evidence of plaintiffs contains uncertainties and inconsistencies, just because, forsooth, she had made and signed a writing twenty-five years ago.

The trial court did not abuse its discretion in denying appellants a continuance during the trial of the cause.  No sufficient diligence was shown.  Besides plaintiffs' title depended largely upon records and writings.  Even if the testimony of the absent witnesses would have established that

Mrs. Belle O. Franklin had represented that the heirs of
A. A. Oglesby had a one-fifth interest only, in their father's
estate, it would have been the truth.

The judgment is supported by the findings.

Judgment affirmed.

Richards, J., and Waste, P. J., concurred.