[L. A. No. 5559. In Bank.—June 29, 1913.]

## JOSEPH R. BINFORD, Respondent, v. LUCILE BOYD, Appellant.

CONSTITUTIONAL LAW—POLICE POWER—LIMITATION ON EXERCISE.—The
    exercise of the police power is available only for the purpose of
    promoting the general welfare, the interests of the public as dis-
    tinguished from those of individuals or persons.

ID.—RIGHT OF CONTRACT—STATUTES.—The legislature may prescribe the
    form in which contracts shall be executed, in order that they may
    be valid or binding, but it cannot limit the right of parties to in-
    corporate into their contracts, otherwise valid, such terms as may
    be mutually satisfactory to them.

ID.—STATUTORY CONSTRUCTION—POLICE REGULATION—GENERAL RULE.—
    In determining the effect of a statute enacted as a police regula-
    tion to promote the public good and purporting to change or limit
    the right of contract for that purpose, the rule is that the changes
    it effects in such right are those only which it expressly declares
    or those only which are necessarily implied from the language used.
    The invasions it makes on constitutional rights are not to be carried
    farther than is necessary to protect the public from the evils in-
    tended to be removed, unless the language compels such meaning,
    and such effect is reasonably calculated to secure the legitimate
    objects for which the power is exercised.

ID.—ARCHITECTURE—ACT REGULATING PRACTICE—THEORY ON WHICH STATUTE UPHELD.—The act regulating the practice of architecture (Stats. 1901, p. 641; amended, Stats. 1903, p. 522) cannot be upheld as a police measure, on the ground that it tended to promote the prosperity of those following the profession of architecture by giving such persons, who could obtain a license an advantage over others, but only upon the theory that it was injurious to the public interest to allow unskilled and unqualified persons to prepare plans and specifications for the erection of buildings, owing to dangers which might arise from defects in plans of construction.

ID.—CORPORATIONS, EFFECT OF STATUTE UPON.—The terms of the act regulating the practice of architecture (Stats. 1901, p. 641) show clearly that it was directed only to individuals as distinguished from corporations.

ID.—EMPLOYMENT OF QUALIFIED ARCHITECTS BY OTHERS.—Either a corporation or an individual may employ certificated architects, have them prepare plans and specifications, and furnish such plans and specifications to other persons, without transgressing the terms of the act regulating the practice of architecture (Stats. 1901, p. 641).

ASSIGNMENT OF CAUSE OF ACTION—DESCRIPTION OF CLAIM ON ASSIGNMENT—IMMATERIAL ERROR IN DATE.—An erroneous date contained in a description may be disregarded where the context, in connection with the attending circumstances, sufficiently describes the thing without the aid of the date.

APPEAL—FINDINGS—FAILURE TO SPECIFY ERROR.—A claim that a finding is not sustained by the evidence, cannot be considered on appeal from the judgment, in the absence of a specification in the bill of exceptions that the finding is not sustained by the evidence.

CORPORATIONS—FORFEITURE OF CHARTER—ASSIGNMENT OF CAUSE OF ACTION—TRUSTEES AS ASSIGNORS—PLEADING—WAIVER OF DEFECT ON APPEAL.—Where an uncertainty in the complaint is not made ground of demurrer, and evidence is given at the trial without objection, which removes the uncertainty and the court finds the fact, the defect is waived.

MOTION TO VACATE JUDGMENT—SURPRISE, INADVERTENCE, OR EXCUSABLE NEGLECT—INSUFFICIENT EXCUSE.—The fact that plaintiff's attorney, two months before the trial, informed defendants' attorney that he intended to amend the complaint, does not excuse the latter from preparing for trial at the time set therefor.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a motion to vacate a judgment. Chas. Wellborn, Judge.

The facts are stated in the opinion of the court.

Alfred H. McAdoo, and A. C. Lawson, for Appellant.

Earl Curtis Peck, for Respondent.

SHAW, J.—The defendant has appealed from the judgment in favor of plaintiff, and from an order denying her motion to set aside said judgment on the ground that it was taken against her by surprise, inadvertence, and excusable neglect.

The action is maintained by Binford as assignee of the Dutro-Wren Construction Company, a corporation. The object of the action was to recover $775, claimed to have been owing to the plaintiff's assignor for the preparation of certain plans and specifications for the construction of a building to be erected for the defendant and certain other parties who were made defendants, but who have not appealed. The answer denies the assignment of the claim to the plaintiff. It also denies that the defendants are or were indebted to the plaintiff's assignor, and denies that they ever requested said assignor to furnish any plans and specifications for them, or that they agreed to pay the value thereof to said assignor, and pleads the bar of the statute of limitations as prescribed in section 339 of the Code of Civil Procedure.

It appears from the evidence that the Dutro-Wren Construction Company offered to make plans and specifications for the building to be erected by the defendants; that in accordance with such offer it prepared such plans and specifications; that the same were accepted by Lucile Boyd on behalf of herself and the other parties interested, and that owing to their inability to obtain sufficient money wherewith to erect the building, they did not go on with the enterprise, and did not use the plans and specifications.

The main defense is based on the proposition that the contract was unlawful because it violates provisions of the act of 1901 entitled, "An Act to Regulate the Practice of Architecture" (Stats. 1901, p. 641). The act establishes a state board of architecture, and empowers said board to examine persons who desire to follow the profession of an architect, and to issue to them licenses for that purpose. Section 5 makes it a misdemeanor, punishable by fine, "for any person to practice architecture without a certificate in this state," and further provides "that nothing in this act shall prevent

any person from . . . furnishing plans or other data for buildings for other persons, provided the person so furnishing such plans or data shall fully inform the person for whom such plans or data are furnished, that he, the person furnishing such plans, is not a certified architect.''

The evidence shows that the officers of the Dutro-Wren Construction Company, who made the contract with Lucile Boyd for the plans in question, did not inform her that said company or the persons whom they had employed to prepare such plans and specifications were not certificated architects; that they said nothing at all to her on that subject. The company did in fact employ one Teepel, a duly certificated architect, to prepare said plans and specifications for the said building. He prepared for said company the plans and specifications which the defendant accepted. The claim of respondent is that the statute of 1901 does not apply to the facts of this case.

The exercise of the police power is available only for the purpose of promoting the general welfare, the interests of the public as distinguished from those of individuals or persons. It cannot be used to promote private gain or advantage, except so far as the same may also promote the public interest and welfare, and it is the latter, and not the former, effect which forms the basis of the power and warrants its exercise. The constitution declares that all men are by nature free and independent and have certain inalienable rights, among which are those of acquiring, possessing, and protecting property, and pursuing and obtaining safety and happiness. (Art. I, sec. 1.) These rights are invaded if the individual ''is not at liberty to contract with others respecting the use to which he may subject his property, or the manner in which he may enjoy it. The legislature may prescribe the form in which contracts shall be executed in order that they may be valid or binding, but it cannot limit the right of parties to incorporate into their contracts respecting property, otherwise valid, such terms as may be mutually satisfactory to them. . . . The right of the owner of land to contract with a builder for its improvement and to compensate him therefor . . . is the same, and as inalienable, as the right of the owner of any other property to contract respecting the payment for any improvement thereof.'' (*Stimson Mill Co.* v. *Braun*, 136 Cal. 125, [89 Am. St. Rep. 116, 57 L. R. A. 726, 68 Pac.

481].) This right of contract, however, is subject to such reasonable police regulations as the legislature may enact tending to promote the public good. In determining the effect of a statute having such object, and which purports to change or limit the right of contract for that purpose, the rule is that the changes which it effects in such right are those only which it expressly declares or which are necessarily implied from the language used. The invasions it makes on constitutional rights are not to be carried farther than is necessary to protect the public from the evils intended to be removed, unless the language compels such meaning and such effect is reasonably calculated to secure the legitimate objects for which the power is exercised. Prior to this statute there was no restriction upon the right of any person to contract for or to furnish plans and specifications for another, or to follow the profession of architecture. All persons were at liberty to form corporations for any lawful purpose, and such corporations, when formed, had full capacity and power to make all contracts necessary or convenient for the carrying out of their lawful powers. The statute cannot be upheld as a police measure on the ground that it tended to promote the prosperity of those following the profession of architecture by giving such persons, who could obtain a license, an advantage over others.

It can only be upheld upon the theory that the legislature believed that it was injurious to the public interest to allow unskilled and unqualified persons to prepare plans and specifications for the erection of buildings, owing to the dangers which might arise from defects in plans or construction. The terms of the act show clearly that it was directed only to individuals as distinguished from corporations. It requires an examination of the person who applies for license, and its language shows that a license can be given only to human beings and not to artificial creations such as corporations. As a corporation could not obtain a license to engage in the profession of architecture, and as it must act wholly by human agency, it could engage in that art or business only by employing individuals who would carry on that business as its officers, agents, or employees. The act is effective upon corporations only to this extent, that if it undertakes to do business of that character, either the persons whom it engages therein must be certificated architects under this statute,

or, when contracting for plans and specifications for the erection of buildings for other persons, such persons must be informed that the plans and specifications will be prepared by someone who is not a certificated architect. The act does not prohibit a corporation from contracting to furnish to another person plans and specifications which are to be prepared by a third person who is a certificated architect. Nor is there anything in the object of the act, or the evils to be removed thereby, which would raise the necessary implication that it was intended to prevent such practice. The main object of the act, so far as furnishing plans and specifications alone is involved, was to secure the erection of buildings from plans prepared by those who were sufficiently schooled in the profession to secure a license from the state board and who had complied with the state law by securing such license. But it was deemed best to qualify the absolute prohibition of the law by allowing the owners of property and persons who were not certificated architects to contract freely with each other for furnishing such plans and specifications, provided the person furnishing the same informed the owner that he was not a certificated architect. It is obvious that if such plans and specifications have been prepared by certificated architects, there could be no object in which the public are concerned which should prevent the sale thereof by the person who prepared them, or by someone to whom he has sold them. The act as a whole shows that it was not intended to prevent the sale of plans prepared by a qualified person, but to prevent their preparation by an unqualified person, unless the purchaser was informed of that fact. The act does not forbid a corporation to employ certificated architects, have them prepare plans and specifications, and then furnish such plans and specifications to other persons. Either a corporation or an individual could do this without transgressing the terms of the act when interpreted in the light of its object and purpose. The corporation was, therefore, acting lawfully in the matter.

We are, therefore, of the opinion that the objections to the validity of this contract are not well taken, and that the plaintiff was entitled to recover the value of the plans and specifications so furnished.

It is claimed that the evidence does not show an assignment to the plaintiff of the claim of the Dutro-Wren contract sued

on. The assignment was offered in evidence and describes the assignment as the claim of said corporation—naming it—against the defendants—naming them—"arising out of certain plans and specifications furnished to them by the said Dutro-Wren Construction Company between July, 1912, and September, 1912." The defect in the proof, as claimed, arises from the fact that the plans and specifications were not furnished in 1912, but were furnished in 1913, sometime between May and September, and it is argued that the assignment must therefore cover some other claim and not that which constitutes the cause of action sued on. There is no pretense that the said company ever furnished any other plans and specifications to the defendants. From this fact it is plain that the description in the assignment could only be interpreted to refer to those which were furnished, and the description would be sufficient but for the dates given, which are erroneous. The dates should therefore be deemed a false call in the description. The other parts of the description sufficiently identify the demand. It further appears that the corporation had ceased to exist at the time the assignment was made, by reason of the fact that it had failed to pay the corporation tax and that its corporate franchise had therefore been forfeited, but that its affairs were carried on by its directors as trustees under the statute providing for the forfeiture, and that this assignment was made by such directors as trustees. This was sufficient to carry to the assignee all the property of the said corporation in the said demand.

It is further contended that the action is barred by the two-year statute of limitations. (Code Civ. Proc., sec. 339.) The action was begun on August 20, 1915. The finding of the court is that the defendant, Lucile Boyd, became indebted to said corporation for the plans and specifications in question, on September 30, 1913. This was within the two years prescribed by the statute of limitations. There is no specification that this finding is not sustained by the evidence. Hence, the claim that the evidence shows that the action is barred cannot be considered.

The further claim is made that the complaint does not state facts sufficient to constitute a cause of action, the particular defect assigned being that, although the complaint alleges that the corporation had forfeited its charter prior to the making of the assignment to the plaintiff, and that the third persons

who made the assignment oh behalf of the corporation were
at that time trustees of the property of the corporation, and
that as such trustees they made the assignment of the de-
mand, there is no allegation respecting the manner in which
they became or were the trustees. The defendants demurred
to the complaint upon general grounds but did not specify
any ambiguity or uncertainty in this respect. The answer
denied that said persons were the trustees of the corporation.
At the trial evidence of the Governor's proclamation, declar-
ing the forfeiture of the company's charter, was received
without objection, and the assignment introduced in evidence
declares that the persons named were the directors of such
corporation. The statute makes such directors the trustees
for the purpose of closing its affairs. The court finds that
the said persons were such trustees. Under these circum-
stances we think that the defect in the complaint, if any there
be, was waived, and the defendants cannot now take advan-
tage thereof.

There was no error in refusing to vacate the judgment on
the ground that it was taken through surprise, inadvertence,
or excusable neglect of the defendant. The defendants filed
their answer in the case and were represented by their attor-
ney at the time of the trial. The failure of the defendant,
Lucile Boyd, to be personally present was due to her neglect,
it is true, but the neglect was not excusable. The main point
in support of this claim is that some two months before the
trial the plaintiff's attorney stated to the defendants' attor-
ney that he intended to amend his complaint, and that for
some unexplained reason the defendants' attorney, because
of this statement, did not expect the trial to take place at the
time set and did not prepare therefor. The excuse is wholly
insufficient to justify any neglect to prepare for the trial.

These comprise all the points made in support of the ap-
peal. We find no error in the record.

The judgment and order are affirmed.

Sloss, J., Richards, J., *pro tem.*, Melvin, J., Wilbur, J.,
Lorigan, J., and Angellotti, C. J., concurred.