[Civ. No. 6285. First Appellate District, Division One.—May 31, 1928.]

R. V. JONES, Appellant, v. ANNA WICKSTROM, Respondent.

Andrew J. Copp, Jr., for Appellant.

Richard A. Dunnigan for Respondent.

CAMPBELL, J., *pro tem.*—This action is one to foreclose a contractor's lien and recover a balance claimed to be due in the sum of $2,757.88 on the construction of an apartment house in the city of Los Angeles. Defendant in her answer sets up the defense that the contract was procured by plaintiff through fraud and misrepresentation; that plaintiff represented that he was a licensed architect and a builder of skill and efficiency, when in truth and in fact he was not a licensed architect, nor had he at the time of entering into the contract—February 3, 1923—any experience in the building of apartment houses.

Under the terms of the contract on which this action is founded the plaintiff undertook to construct for defendant on certain property owned by her in the city of Los Angeles a 56-room apartment house. The contract is what is commonly referred to as a cost-plus contract, that is, one whereby the owner agrees to pay for all materials and labor furnished thereunder, and in addition thereto a percentage thereon as compensation to the contractor for his services. In the contract here the percentage on the net cost of the materials and labor was to be ten per cent of the cost of the construction of the building. The contract also provided for the payment to plaintiff of an additional compensation of five per cent for services in drawing plans.

The evidence discloses the following facts: At the time of entering into the contract the plaintiff was twenty-eight years of age; that he had been engaged in selling automobiles

and was engaged in the real estate business; that on February 3, 1923, he had in course of construction an apartment house, but prior to that time had never built an apartment house. While the contract provided for architectural supervision, plaintiff, as he himself testified, was not a licensed architect and never had been and made no statement in this regard to the defendant. The plans and specifications were not prepared by a licensed architect, but were prepared by the Home Seekers Service Corporation, as plaintiff testified "whom I employed to draw the plans. They were not licensed architects at that time."

Defendant testified that prior to entering into the contract she had never engaged the services of a contractor, architect or builder. Plaintiff, in the procurment of the contract, represented to defendant that he could build a 56-room apartment house for $40,000 and that the building could be financed by his father; that she had no advice or counsel other than from plaintiff; that she believed the statements he made that he was an architect and builder; that at the time the contract was signed there were no plans or specifications attached to the contract; that plaintiff said he was qualified; that he had built some very good houses, lots of houses in Portland, and big apartment houses; that he built a number of houses in Los Angeles, and defendant asked to see some of them; that all he showed her were two or three bungalow courts and the Santos Apartments, which was under construction; that defendant told plaintiff that she was not very strong and would have to have somebody that was perfectly capable to look after the building and put it up; that he said he could recommend himself to be the best in the city; that she believed his statements that he was an architect and did building, or she would not have employed him.

After the building was started it became necessary to remove the foundation forms in order to put in a deeper foundation. When the foundation forms were taken out no cement was taken out and no concrete was poured.

On June 22, 1923, defendant notified plaintiff in writing that she intended to sublet all the carpenter work, both rough and finished, and finish hardware, in connection with the construction of the apartment house as specified in the contract, according to the plans and specifications, and

that with plaintiff's consent to such subletting and waiving the right to furnish the labor and material as may be involved therein, she would waive, relinquish, surrender, and extinguish any claim against plaintiff for defective workmanship or material or damages arising out of the contract. At the bottom of this notice plaintiff signed the following consent: "In consideration of the foregoing waiver I hereby consent to the subcontract herein referred to."

Plaintiff did no further work or supervision under the terms of his contract subsequent to June 22, 1923, the date the consent mentioned was signed releasing him from liability. Up to this time there was not expended in construction under the contract in excess of $4,000.

According to the testimony of defendant, George R. Nickerson, superintendent for plaintiff, was there only a few minutes each day to check up the lumber for the purpose of seeing that the money represented by a mortgage of plaintiff's father was used for the purchase of materials to go into the building. Defendant further testified that all material after June 22, 1923, was ordered by the foreman working under the direction of defendant; that she was on the job a great deal of the time when Mr. Gale was there, and that after he left she was there most of the time; that she did not see Mr. Nickerson more than once every three or four days after June 22, 1923, and never saw plaintiff on the job after that date.

Two thousand dollars of the amount claimed is for preparing plans and specifications, which admittedly were not drawn by a licensed architect, and on account of which, prior to learning that plaintiff was not a licensed architect, defendant paid $1,500. ■ Plaintiff not being a licensed architect and not informing defendant of such fact, but on the contrary representing to her that he was a licensed architect, the contract in this respect is unlawful and void.

■ The act to regulate the practice of architecture (Stats. 1901, p. 641) establishes a state board of architecture and empowers such board to examine persons who desire to follow the profession of an architect and to issue them a license for that purpose. Section 5 of the act makes it a misdemeanor punishable by a fine "for any person to practice architecture without a certificate in this state," and further provides "that nothing in this act shall prevent any per-

son from . . . furnishing plans or other data for buildings for other persons, provided the person so furnishing such plans or data shall fully inform the person for whom such plans or data are furnished that he, the person furnishing such plans, is not a certified architect." The act of 1901 was passed for the protection of the public and "every case from every court recognizes that when a statute has been made for the protection of the public, a contract in violation of its provisions is void." (*Payne* v. *De Vaughn,* 77 Cal. App. 399, 403 [246 Pac. 1069, 1071]; *Tatterson* v. *Kehrlein,* 88 Cal. App. 34 [263 Pac. 285].)

Up to June 22, 1923, according to the testimony of .defendant, there was not to exceed $4,000 expended in the construction under the provisions of the contract, while Albert A. Hasford, auditor and general office man of plaintiff R. V. Jones, Jr., testified: "Up to the 22nd day of June, 1923, on this job, there was paid out $2718.10 . . . That was the amount that was actually paid out on this job to the 22nd day of June, 1923, but $15,000 worth of bills had been contracted prior to that time on this job, approximately. In other words, we had made commitments to this extent; that is we had obligated ourselves to the subcontracts to give orders to this amount, which we had issued. The subcontract had not been paid; it amounted to fourteen hundred and some odd dollars. It was not completed prior to the 22nd day of June, 1923, only partially completed . . . On this $15,000 item some of the work had been done; some of the material was on the job but had not been paid for; some of the contracts had been started but nothing had been applied on them. Part of the $2700 was for payroll for labor performed, surveys, excavating, the original item is there for $1500."

If the contract was modified or canceled on June 22, 1923 as found by the court, then the best plaintiff could claim would be ten per cent on the amount due for materials and labor on that date. According to the testimony of respondent there was expended but $4,000 and there would therefore be nothing due, and if we adopt the figure of $15,000 given by appellant's auditor and office man, he would be entitled to but $1,500, which amount he had received.

Appellant in support of this appeal urges only objections to certain findings wherein the court finds that the contract

was terminated as of date June 22, 1923; that no services as provided by said contract were furnished by plaintiff to defendant subsequent to June 22, 1923; that plaintiff had little experience as a builder of apartment houses; that he represented to defendant that he was an experienced designer and experienced in building apartment houses and that he concealed from defendant that he had practically little or no experience as a designer of apartment houses and that had defendant known such facts she would not have entered into the contract; that plaintiff represented to defendant that the maximum cost of construction of a 56-room apartment house, including plans and specifications, would not exceed $40,000, but that the apartment house consisting of but 48 rooms cost $50,000 by reason of the inexperience, unskillfulness and inefficiency of plaintiff as a builder. These findings are attacked by appellant in his brief on the ground that they are not supported by any evidence in the case.

The objection that the findings are not supported by the evidence is not available to appellant. He chose to appeal by a bill of exceptions. In the bill of exceptions he failed to specify wherein the findings are unsupported by the evidence. The bill of exceptions purports to set forth the evidence adduced at the trial, but contains no specifications whatever. This being the state of the record, the point made by appellant that the evidence is insufficient cannot be raised here (*Moore* v. *Franklin*, 49 Cal. App. 103, 108 [192 Pac. 1047]). Such specifications are necessary in order to authorize the court to review the evidence and consider its sufficiency (*Goldman* v. *Dahlberg*, 79 Cal. App. 380 [249 Pac. 536]; *Winterburn* v. *Chambers*, 91 Cal. 185 [27 Pac. 658]; *Meades* v. *Lazar*, 92 Cal. 227 [28 Pac. 935]; *Estate of Depeaux*, 118 Cal. 290 [50 Pac. 387]; *Estate of Behrens*, 130 Cal. 418 [62 Pac. 603]; Code Civ. Proce., sec. 648). We must assume that the findings are sustained by the evidence which was presented at the trial, as appellant has not in his bill of exceptions made any specification of insufficiency in that respect (*Winterburn* v. *Chambers*, *supra*).

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.