[L. A. No. 10355. In Bank.—June 18, 1930.]

JAMES A. FORCE, Appellant, v. LILLIE HART, Respondent.

Henry Trowbridge for Appellant.

H. G. Bittleston and L. W. Jaycox for Respondent.

SEAWELL, J.—Plaintiff, James A. Force, a general contractor, appeals from a judgment entered in favor of defendant, Lillie Hart. Plaintiff sought to recover judgment for the reasonable value of certain building plans and specifications alleged to have been prepared at defendant's request, the reasonable value of which was alleged to be $4,110, and to recover damages in the sum of $5,700 on account of defendant's repudiation of an alleged contract employing him to construct the building for which he had prepared plans. Plaintiff also asked judgment for $71.50, which sum was paid out by him in procuring a building permit from the city of Los Angeles for the construction of said building. The court granted a nonsuit as to the cause of action for damages for breach of contract and rendered judgment for defendant upon the other two counts of the complaint.

It is not disputed that plaintiff caused plans and specifications to be prepared by a noncertified architect for a three-story brick apartment house to be constructed upon property in the city of Los Angeles owned by defendant, and that defendant gave her written approval to the building plans as prepared by plaintiff's noncertified architect. The reasonable value of said plans, alleged in the complaint

to be $4,110, was found by the court to be $2,877. Said plans were prepared with the expectation and intention of both plaintiff and defendant that plaintiff, as a building contractor, should construct a building for defendant in accordance therewith. No written building contract was ever entered into. Plaintiff refused to proceed with the construction of said building unless defendant made an advance payment of $2,000 on account of the architect's and engineer's fees. This demand being refused, plaintiff claimed that defendant had repudiated her contract; hence this action.

The court below was of the view that the parties contemplated a written building contract, including plans and specifications, and did not intend to rest their engagements in various oral negotiations, and that there was no separate, independent binding contract for the preparation of the plans and specifications, but whatever contract they had in contemplation was intended to be indivisible. The court was further of the view, as indicated by its findings, which are supported by evidence, that all transactions were had with the express understanding that defendant had no money to put into the building scheme, and that the entire cost of construction, including any charge for plans and specifications, should be paid from funds to be procured by loans, for which plaintiff agreed to arrange, upon the security of said real property, which was clear of encumbrances, and the building to be erected thereon. Irrespective of any question as to the necessity of a written contract, plaintiff was, therefore, without right to demand a cash payment from defendant upon the completion of the plans as a condition precedent to the matter of obtaining loans and constructing the building, and upon her refusal to meet such demands to sue for the reasonable value of the plans and for breach of a contract employing him to build.

The trial court found, upon evidence which supports its conclusion, that the price of $68,500, for which plaintiff offered to construct the building, was to cover the charge for plans and specifications. Plaintiff does not claim that any definite amount was ever agreed upon as a charge for the plans and specifications separate from the figure for the total cost of construction. His testimony was that at the commencement of their negotiations, defendant stated that

she had $5,000 in cash to apply upon the building, and that he offered to arrange for loans to cover the balance of the cost of construction; that said $5,000 was to be paid upon completion of the plans and specifications and was intended to pay for said plans and specifications and to apply on the balance of the price for construction; that when it was decided to build a three-story apartment house instead of remodeling the structure then on defendant's premises and building a new cottage, as originally contemplated, defendant stated that the change in plans made it necessary that she use all but $2,000 for other purposes; and that upon the completion of the plans and defendant's approval thereof, he demanded payment of said $2,000 and, upon defendant's refusal to pay any sum in excess of $500 or $600, he brought this action.

Defendant emphatically denied that she had promised or offered to pay any sum whatsoever in cash. She testified that no claim was ever made as to the payment of any sum upon completion of the plans until plaintiff demanded a payment before proceeding further at the time she gave her approval to said plans in April. She fixed the amount demanded at $1900, of which sum $900 was to be paid to plaintiff, and $500 each to the draftsman and engineer who had drafted the plans. She testified unequivocally that at their first meeting she told plaintiff—and he fully understood the agreement—that she had no cash available, and unless loans could be obtained upon the security of the property, which was then clear, and upon the building to be constructed, there was no use in preparing plans or considering the proposition further. Plaintiff expressed his ability to fully finance the project. The evidence is sufficient to sustain the finding that any charge for plans and specifications was intended to be included in the costs of construction. Nothing to the contrary having been said when defendant changed her plans from remodeling the old building and constructing the cottage to the building of a three-story apartment house, the parties must be presumed to have continued their dealings on the original basis. Defendant's testimony is corroborated by that of her sister and one Hurst, who introduced plaintiff to defendant.

■ The conflict between plaintiff's and defendant's accounts of what actually took place was resolved by the

court below in defendant's favor. There is nothing inherently improbable in defendant's version which would permit this court, as an appellate tribunal, to reject her testimony and the finding in her favor based thereon.

Evidence as to negotiations between the parties before the decision to build the three-story apartment house, instead of remodeling the building then on the property and erecting, in addition, a new cottage, was admissible because necessary to an understanding of the transaction with regard to the said apartment house. The arrangement contemplated under the incomplete written instrument of January 18th, reciting a hiring of the plaintiff to draw plans for remodeling and building a new cottage, but fixing no price for such services, as explained by the evidence upon the trial, does not appear to differ from that under which the plans for the three-story apartment house were later drawn.

What we have said also requires an affirmance of that portion of the judgment denying plaintiff's recovery upon the second count of the complaint, wherein he sued for the sum of $71.50 expended by him in obtaining a building permit from the city of Los Angeles. Appellant was warned by defendant against incurring this cost upon his demand for cash advances which defendant refused to make.

The allegations and denials of the answer were broad enough to permit defendant to show that plaintiff was to look to funds to be obtained through loans to compensate him, although it is nowhere specifically alleged in the answer that such an understanding existed. Any claimed inconsistency in the findings disappears when they are read as a whole in the light of the proofs.

Although the defendant and respondent does not make the point in her brief, it is nevertheless true that upon the trial the provisions of the act regulating the practice of architecture (Stats. 1901, p. 641) were called to the attention of the court by counsel. Neither plaintiff nor Davis, who was employed by him to draw the plans and specifications, was certified as required by said act. The act provides that it shall be a misdemeanor for any person to practice architecture without first having obtained a certificate to so practice, "provided, that nothing in this

act shall prevent any person from . . . furnishing plans or other data for buildings for other persons, provided the person so furnishing such plans or data shall fully inform the person for whom such plans or data are furnished that he, the person furnishing such plans, is not a certificated architect.'' There is no evidence in the record that defendant was informed that the plans were to be prepared by an unlicensed architect. A contract for architectural services to be performed in violation of the terms of the statute is void. (*Binford* v. *Boyd,* 178 Cal. 458 [174 Pac. 56]; *People* v. *Allied Architects Assn.,* 201 Cal. 428 [257 Pac. 511]; *Payne* v. *De Vaughn,* 77 Cal. App. 399 [246 Pac. 1069]; *Jones* v. *Wickstrom,* 92 Cal. App. 292 [268 Pac. 449].) If the contract should be interpreted to be severable as appellant insists it should be, the foregoing statute would bar him from recovering an architect's fee.

We find no ground which would justify a reversal.

Judgment affirmed.

Shenk, J., Preston, J., Waste, C. J., Richards, J., and Curtis, J., concurred.