[Civ. No. 532. Fourth Appellate District.—February 19, 1932.]

MEYER & HOLLER (a Corporation), Appellant, v. H. D. BOWMAN, Respondent.

Lowenthal, Lissner, Roth & Gunter, Paul Loewenthal and William Berger for Appellant.

Gibson, Dunn & Crutcher and H. F. Prince for Respondent.

BARNARD, P. J.—This action was brought to recover for services rendered in preparing preliminary plans and specifications for the erection of a building. In a first cause of action it is alleged that "the defendant employed the plaintiff to prepare the design, drawings, plans and specifications, and estimate the cost of the building hereinbefore referred to, and to do all the engineering, architectural and other work preliminary to and in connection with the construction of said building, and agreed to pay the plaintiff for said work an amount equal to the actual cost thereof, plus fifty (50%) per cent. of said actual cost". In a second cause of action the plaintiff seeks to recover the reasonable value of the same services. At the conclusion of the plaintiff's case, including the proffer of certain evidence, a judgment of nonsuit was entered, from which this appeal is taken.

The first question presented is as to whether the appellant is barred from a recovery by the provisions of the act regulating the practice of architecture (Stats. 1901, p. 641), and the amendment thereto. The appellant is a corporation. Upon its letter-head appear the words "Architecture, Engineering and Construction". It appears from the evidence that neither Meyer nor Holler, who are the principal officers of the corporation, were certified architects, and there is no evidence that any stockholder or officer connected with the corporation was a certified architect. In a bill of particulars which was furnished it appears that twenty-two persons worked 1288 hours in preparing the plans and specifications which are the basis of this action. Only one of these persons, a Mr. Wilkinson, was a certified architect and it appears that he worked only forty-three

hours of the 1288 hours devoted to the preparation of the plans and specifications here in question. It is conceded that the defendant was never informed that the plaintiff was not a certified architect nor that the work would be done by other than certified architects. While Mr. Wilkinson testified that he was in charge of the corporation's architectural department and that the work was done under his supervision, the bill of particulars furnished shows that the principal expense was for drafting during certain weeks and that during a number of these weeks no charge was put in for Mr. Wilkinson's time.

In *Force* v. *Hart*, 209 Cal. 600 [289 Pac. 828, 830], the court said: "Neither plaintiff nor Davis, who was employed by him to draw the plans and specifications, was certified as required by said act. The act provides that it shall be a misdemeanor for any person to practice architecture without first having obtained a certificate to so practice, 'provided, that nothing in this act shall prevent any person from . . . furnishing plans or other data for buildings for other persons, provided the person so furnishing such plans or data shall fully inform the person for whom such plans or data are furnished that he, the person furnishing such plans, is not a certified architect'. There is no evidence in the record that defendant was informed that the plans were to be prepared by an unlicensed architect. A contract for architectural services to be performed in violation of the terms of the statute is void. (*Binford* v. *Boyd*, 178 Cal. 458 [174 Pac. 56]; *People* v. *Allied Architects Assn.*, 201 Cal. 428 [257 Pac. 511]; *Payne* v. *De Vaughan*, 77 Cal. App. 399 [246 Pac. 1069]; *Jones* v. *Wickstrom*, 92 Cal. App. 292 [268 Pac. 449].)

In *Binford* v. *Boyd*, 178 Cal. 458 [174 Pac. 56, 58], the court said: "The act is effective upon corporations only to this extent, that if it undertakes to do business of that character, either the persons whom it engages therein must be certificated architects under this statute, or, when contracting for plans and specifications for the erection of buildings for other persons, such persons must be informed that the plans and specifications will be prepared by someone who is not a certificated architect. The act does not prohibit a corporation from contracting to furnish to another person plans and specifications which are to be pre-

pared by a third person who is a certificated architect. Nor is there anything in the object of the act, or the evils to be removed thereby, which would raise the necessary implication that it was intended to prevent such practice. The main object of the act, so far as furnishing plans and specifications alone is involved, was to secure the erection of buildings from plans prepared by those who were sufficiently schooled in the profession to secure a license from the state board and who had complied with the state law by securing such license. But it was deemed best to qualify the absolute prohibition of the law by allowing the owners of property and persons who were not certificated architects to contract freely with each other for furnishing such plans and specifications, provided the person furnishing the same informed the owner that he was not a certificated architect. It is obvious that if such plans and specifications have been prepared by certificated architects, there could be no object in which the public are concerned which should prevent the sale thereof by the person who prepared them, or by someone to whom he has sold them. The act as a whole shows that it was not intended to prevent the sale of plans prepared by a qualified person, but to prevent their preparation by an unqualified person, unless the purchaser was informed of that fact. The act does not forbid a corporation to employ certificated architects, have them prepare plans and specifications, and then furnish such plans and specifications to other persons."

In *Payne* v. *De Vaughan*, 77 Cal. App. 399 [246 Pac. 1069, 1071], the court said: "Under this statute there is but one way in which a person who has no certificate can legally render such architectural services as were to be performed by respondent. Such person can 'inform the person for whom such plans or data are furnished, that he, the person furnishing such plans, is not a certified architect'. Therefore, if it be shown that the respondent practiced architecture, the burden is clearly upon him to prove that he brought himself within the exception just quoted by giving the appellant the required information. It is not contended that the respondent did this. Under such circumstances the task of the court is a simple one. It is merely to decide whether or not the work contracted to be performed constituted practicing architecture."

Appellant, while admitting that respondent was not informed of the true situation, and also admitting that the work was in a very large part performed by unlicensed architects, seeks to avoid the effect of this statute through the claim that Wilkinson, a licensed architect, was in charge of their architectural department and that the work was done under his supervision. It is argued that it is not the intent of the statute to prohibit a licensed architect from employing unlicensed and even nonprofessional help for such details as lettering, blue-printing and the like. Whatever might be held in that regard in a proper case, we think the circumstances here existing show an evasion of both the letter and the spirit of the act, which cannot be upheld. As stated in *Binford* v. *Boyd, supra,* this statute can only be upheld "upon the theory that the legislature believed that it was injurious to the public interest to allow unskilled and unqualified persons to prepare plans and specifications for the erection of buildings, owing to the dangers which might arise from defects in plans or construction". It is perfectly apparent from the evidence that almost all of the work for which recovery is here sought was performed by persons who were not licensed as architects and even the claim of supervision by a licensed architect falls, at least in part, by the showing made, since it appears that a charge was regularly made for the time put in by this certified architect, and it also appears that no such time was put in by him during several weeks when a large part of the work was being done by the other employees. That the very sort of inefficiency from which the public is sought to be protected by this statute, existed here, seems apparent from the fact that these plans, if they were ordered at all, were ordered in September, and were not completed on March 20th of the next year, and this in spite of constant urging that they were hastened; that the plans had to be resubmitted many times because of defects and shortcomings; and that, as shown by the evidence, even interested parties who were not architects felt compelled to call the attention of those doing the work to the fact that the plans submitted did not comply with existing building ordinances. Under the terms of the statute, and the circumstances shown by the evidence, we think it clearly appears that the appellant was not entitled to recover.

■ A further reason why the appellant may not recover appears, in that no breach of the contract on the part of the respondent is shown. The negotiations between the parties began early in September, 1923, and the appellant quit work upon the preliminary plans on March 20, 1924. The appellant endeavored to interest the respondent in erecting a building to be leased to the Pasadena Furniture Company. The respondent stated that he would be willing to do this if a profitable deal could be arranged. He asked for free sketches, but was told that they never furnished free sketches but that they were willing to make preliminary plans for one and one-half times the cost thereof. He secured·sketches from the prospective tenant. The appellant produced some testimony that the respondent then asked it to prepare preliminary plans. However, the evidence shows that long before any work was done on any preliminary plans, the appellant submitted to the respondent a definite contract covering full and complete plans and specifications for the final erection of the building, including their services in overseeing and supervising the erection of the building. The respondent refused to sign this contract, requesting many changes. Several other contracts of this nature were submitted to him, all of which were unsatisfactory. It appears, however, that he was willing to sign a contract containing provisions satisfactory to him, which he outlined to the corporation. In the meantime, on a number of different occasions, partial preliminary plans were submitted to him, and on each occasion he returned these with suggestions as to how they must be corrected. After matters had thus proceeded for some months and on March 20, 1924, the appellant stopped work. In reference thereto the appellant offered to prove "that the work was abandoned by Meyer & Holler only because Mr. Bowman steadfastly refused to sign a written contract for the work and that it was then abandoned because Meyer & Holler felt that doing the work for one and one-half per cent, even if it might be thereafter abandoned, was not a source of profit to them and that they did not want' to continue on that basis and that they would bring their action either on an express or oral contract for the payment of one and one-half times the actual cost or for the reasonable value of their services; that the contract and the work was finally abandoned after

Mr. Bowman had verbally agreed with Mr. Meyer that he would sign the contract, and, thereafter, refused to sign''. While the action brought by the appellant is based upon the theory that there was a separate oral contract covering the preliminary plans for this building, it appears that they ceased work upon such plans for the reason that the respondent would not sign the particular written contract which they were demanding, and because they feared it might not .prove profitable to them to proceed. If it be assumed that the evidence is sufficient to show an oral contract for the preparation of the preliminary plans, and that the respondent agreed to pay one and one-half times the cost of preparing such plans, the evidence still fails to show that these preliminary plans were ever completed or delivered, or that any demand for payment therefor had been made prior to the bringing of this action. On the other hand, it fully appears that, while preliminary plans were submitted to the respondent on several occasions for his approval, on each such occasion he returned them as incomplete and incorrect, with definite specifications of their inadequacy. Thereupon the appellant ceased work on the plans, assigning as a reason therefor the failure of the respondent to sign a written contract covering this and much additional work. Under such circumstances, the appellant was neither entitled to recover upon a specific contract nor for the reasonable value of the work already done, and the judgment complained of was properly entered.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.