[Civ. No. 12797. First Dist., Div. Two. Sept. 19, 1945.]

THE FIDELITY & CASUALTY COMPANY OF NEW YORK (a Corporation), Respondent, v. N. ABRAHAM et al., Appellants.

A. B. Bianchi for Appellants.

Hadsell, Sweet & Ingalls for Respondent.

NOURSE, P. J.—Plaintiff sued to recover attorney's fees and expenditures incidental to an indemnity agreement executed by defendants with plaintiff for the release of an attachment against N. Abraham in another action then pending against that defendant. The cause was tried to the court without a jury upon a stipulation of facts and the testimony of one witness. Plaintiff had judgment for the full amount prayed for.

In the year 1926 the defendant N. Abraham entered into a joint venture with Harry and Lou Silberman who were engaged in the scrap metal business under the corporate name of San Francisco Iron & Metal Company. The new venture became indebted to Goodyear Redwood Lumber Company in the sum of $4,909.61. In December, 1927, the partnership dissolved; its assets were transferred to the San Francisco Iron & Metal Company which assumed the indebtedness of the partnership including the claim of the lumber company. The Silbermans disputed this claim, asserting, on the basis of weighers' receipts, that they had been overcharged approximately one-half the amount of the claim. In 1929 the lumber company represented by attorney Hatch assigned the claim to Miss V. Berges who was a secretary in the attorney's office and who, through her attorney, filed suit on the claim against N. Abraham, the two Silbermans, and the N. Abraham Mercantile Company. On February 13, 1929, Berges caused a writ of attachment to issue and levy was made upon the personal property of N. Abraham. On February 21, 1929, N. Abraham and his wife Rose executed the indemnity agreement with respondent herein for the release of such attachment.

The foregoing facts are not controverted but the respondent disputes appellants' version of what occurred thereafter. At all the times herein mentioned A. B. Bianchi was the attorney acting for these appellants. He testified, without contradiction, that before this undertaking was filed and on many occasions thereafter he had several conversations with the attorney for Berges, the effect of which was that, for various considerations promised to Berges, the latter would press her claim against the codefendant of the Abrahams only, and would not attempt to collect from the Abrahams.

After Berges obtained judgment against all the parties sued for the full amount of the claim, it is conceded that the respondent herein carried on negotiations for the purchase of

the judgment and that respondent was fully informed of the so-called Hatch-Bianchi agreement. One of the considerations for this agreement was that Bianchi would disclose to Berges the interest of the San Francisco Iron & Metal Co. and give her information as to property of the Silbermans which she could attach. Bianchi performed this part of the agreement and, acting on the information so received, Berges amended her complaint to include the corporation as a party defendant and levied an attachment on its property and upon that of the Silbermans. To release this attachment the Century Indemnity Company executed its indemnity agreement. Other elements of the Hatch-Bianchi agreement will be referred to later. Following the history of the case, it appears that over the repeated protests of these appellants and with full knowledge of the Hatch-Bianchi agreement the respondent herein purchased the Berges judgment at its face value and commenced suit in the name of Nelson, an employee in the office of the attorneys, against the Century Indemnity Company in September, 1931. This litigation was carried into the federal courts and was not ended until January, 1939, when judgment in favor of Nelson became final. Thereupon the Century Company paid to Nelson the sum of $9,528.62 covering the amount of the Berges judgment, interest and costs recovered from the Century Indemnity Company. The present suit is to recover attorneys' fees and other expenses incidental to the litigation with the Century Indemnity Company. It was tried upon an amended complaint, an answer and an amendment to the answer which set up the special defense of estoppel arising out of the Hatch-Bianchi agreement.

In support of this defense Bianchi was the sole witness. He testified that Hatch promised not to proceed to a satisfaction of a judgment against Abraham if he could obtain security against the codefendants sufficient to satisfy any judgment he recovered, and if Bianchi would give him information by which he would obtain a judgment against the Metal Company. This portion of the agreement was immediately acted upon. Through Abraham's information, Berges acting through her attorney Hatch, amended her complaint to include the Metal Company as defendant, and through the same source, Berges attached property of the codefendants who forthwith posted a bond in the sum of $6,000 with the Century Indemnity Company as surety. But Berges was

still reluctant to go to trial without the aid of Bianchi and Abraham to meet the counterclaim of the codefendants. Upon the repeated assurance of Hatch that the agreement would be honored Bianchi and Abraham gave him the evidence through which he was able to prove that the weight receipts relied on by the Silbermans were false. Hence, through Bianchi's compliance with his agreement, Hatch and Berges were enabled to obtain a judgment against the codefendants for the full sum sued for. This judgment was entered in October, 1929. The codefendants took an appeal and Hatch persuaded Bianchi not to appeal in behalf of Abraham and again stated that he would abide by his agreement and asked and received, as further consideration for the agreement, the professional aid of Bianchi in securing a dismissal of the Silbermans' appeal and money paid to Hatch as attorney for Berges.

In explanation of a letter dated February 26, 1929, from Hatch to Bianchi in which he stated that he proposed "to primarily direct" his efforts against the codefendants, and that "this is not to be considered as in any way exonerating your client" the witness Bianchi testified that this "was just a feeler" and after that date, and after Hatch got his bond from the Century Indemnity Company, and after Hatch was pretty well assured he would get a judgment in full against the co-defendants that "he expressly committed himself . . . not to enforce the judgment against the defendant Abraham." The witness also testified that knowledge of this agreement was disclosed to respondent before it purchased the Berges judgment together with a protest and demand that respondent stand suit on the bond so that the defense of estoppel might be raised against Berges—the claimed beneficiary of the Hatch-Bianchi agreement. All this testimony stands uncontradicted—except for the self-serving line in the Hatch letter of February 26, 1929. Then at the close of the trial it was stipulated that Bianchi should be deemed to have testified that he informed Hatch of the existence of a bank account of the codefendants Silbermans, that thereafter Hatch levied on that account, and thereafter the codefendants delivered the release bond of the Century Indemnity Company upon which the respondent herein sued and recovered judgment.

On this evidence the trial court found:

"That it was not orally or otherwise agreed or understood by the said Berges and the said Nathan Abraham, either in

consideration of any promises of the defendant, Nathan Abraham, to divulge information as to the identity and location of attachable property belonging to his co-defendants in the action mentioned in paragraph III of these findings or information which would make possible and facilitate the proof of the total of the claim of the plaintiff, Berges, in said action, or in or for any other consideration, or at all that said Berges would not press the payment of any judgment obtained against said Nathan Abraham but would proceed to the satisfaction thereof against his said co-defendants only and/or their surety; that it was not further understood or agreed by said Berges and said Nathan Abraham that, pending any appeal or motion for a new trial by the co-defendants of Nathan Abraham in said action mentioned in paragraph III of these findings, said Berges would also refrain from proceedings for satisfaction of judgment against said Nathan Abraham or surety; that the counsel for Berges in said action did not promise or agree orally or otherwise or at any time that he would not proceed to enforce any judgment in said action against said Nathan Abraham or his surety; that the said defendants Nathan Abraham and Rose Abraham did not consent to or authorize the purchase of said judgment in said Berges action by the said G. Nelson and/or the plaintiff herein and that said defendants herein advised the plaintiff herein of their objection to the purchase of said judgment; that prior to the purchase of said judgment by the said G. Nelson as found in these findings, the plaintiff herein and said G. Nelson were advised by defendants that defendants claimed that said Berges and said defendant Nathan Abraham had entered into the agreements which are herein found not to have been made.''

In denying a motion for a new trial the court amended this finding as follows: ''that, without reflecting or ruling upon, and without intending to reflect or rule upon, the truth of the oral testimony of A. B. Bianchi as a witness for defendants, the court finds that the evidence in this case, taken as a whole, does not affirmatively establish that such agreements were made or that such understandings were had and does not affirmatively establish that the attorney for Berges (Hatch) had any authority to make such agreements or to enter into such understandings, and the findings in this paragraph in respect to said agreements or understandings are to be so understood.''

The finding is confusing. If it was intended as a finding that Berges and Abraham did not personally enter into the agreement it is correct to that extent. If it was intended as a finding that Hatch and Bianchi did not enter into the agreement as their agents it is contrary to all the evidence. The portion of the finding that plaintiff and Nelson were advised of defendants' claim or version of the Hatch-Bianchi agreement before they purchased the Berges judgment is supported by the evidence and not controverted by the respondents at this time. But the amended finding puts an entirely different phase upon the whole subject. It reads: "without reflecting or ruling upon . . . the truth of the oral testimony of A. B. Bianchi as a witness for defendants." Now the whole evidence supporting appellants' defense of estoppel depended upon the oral testimony of the witness Bianchi and to determine that issue it was incumbent upon the trial court to "rule upon" the "truth" of that testimony. If that testimony was true the defense of estoppel was proved, assuming that the contract is valid, a point to be considered later. But, if the testimony of this witness was false, it was necessary for the court to so find and then the question would be presented here whether, under all the circumstances found in the record, there was anything to support the finding that the testimony was false, or that it was so inherently improbable that it should be rejected as a matter of law. ■ But the settled rule is that the uncontradicted and unimpeached testimony of a witness cannot be arbitrarily disregarded. In *Gomez* v. *Cecena,* 15 Cal.2d 363, 366 [101 P.2d 477], the Supreme Court said: "While no universal and immutable formula can be prescribed for determining the weight to be accorded testimonial evidence, it has frequently been said that testimony which is not inherently improbable and is not impeached or contradicted by other evidence should be accepted as true by the trier of facts." (Citing cases.) ■ Since the trial court did not find that the testimony was false we must presume that it was true. ■ Hence, the purport of the finding as a whole is that the agreement was made as testified to but that neither Hatch nor Bianchi had authority to make it or to bind their clients.

■ It may be conceded that, under the provisions of section 283 of the Code of Civil Procedure defining the powers of an attorney in relation to his client, neither Hatch nor Bianchi had statutory authority to make the agreement bind-

ing their clients without the latters' consent. But the rules governing the attorney-client relation are founded on the general rules governing the relation of principal and agent. In this respect the rule is universal that, notwithstanding the lack of express or apparent authority in the agent his act is binding on the principal if the latter ratifies it and accepts the benefits of the agent's act. This principle has been recognized in a long line of decisions commencing with *Smith* v. *Whittier* 95 Cal. 279, 288 [30 P. 529], where the Supreme Court said: "The section does not require a construction that in no instance shall an agreement which the attorney may make in behalf of his client be binding, unless entered in the minutes of the court or filed with the clerk. Its provisions have reference to executory agreements, and not to those which have been wholly or in part executed; and it was with reference to oral agreements of an executory character that the court said in its opinion in *Borkheim* v. *B. & M. Ins. Co.*, 38 Cal. 628, 'of such agreements, therefore, there can be no *specific performance*.' If under the terms of a mutual stipulation, which was only verbal, one party has received the advantage for which he entered into it, or the other party has at his instance given up some right or lost some advantage, so that it would be inequitable for him to insist that the stipulation was invalid, he will not be permitted to repudiate the obligation of his own agreement, upon the ground that it had not been entered in the minutes of the court. (*Himmelmann* v. *Sullivan*, 40 Cal. 125; *Hawes* v. *Clark*, 84 Cal. 272 [24 P. 116]; *People* v. *Stephens*, 52 N.Y. 306.) If the party admits that he made such verbal stipulation, it will be as binding upon him as if it had been entered in the minutes of the court. (*Patterson* v. *Ely*, 19 Cal. [28] 36; *Reese* v. *Mahoney*, 21 Cal. 306.)" This language was quoted with approval in *Webster* v. *Webster*, 216 Cal. 485, 490, 491 [14 P.2d 522], where the court added that the agreement having been fully executed, and the plaintiff therein having retained the benefits "it would be inequitable to permit plaintiff to now repudiate the agreement." The same principle was followed in *Cathcart* v. *Gregory*, 45 Cal.App.2d 179, 187 [113 P.2d 894]; *Witaschek* v. *Witaschek*, 56 Cal.App.2d 277, 283 [132 P.2d 600]; and *Jones* v. *Noble*, 3 Cal.App.2d 316, 320 [39 P.2d 486] to the effect that the code section had "reference to executory agreements, and not to those which have been wholly or in part executed." (*Cathcart* v. *Gregory, supra.*)

But respondent replies that there is no evidence that Berges had knowledge of the agreement, that Hatch and not Berges accepted the benefits. Berges was an employee in the office of Hatch and acted merely as his instrument as a nominal plaintiff for the purpose of the suit. Berges first acted upon the agreement when she amended her complaint and followed this with a levy of an attachment upon property of the codefendants disclosed to her under the agreement.

Then respondent argues that there was no showing that either Nelson or respondent affirmed the agreement. Nelson was an employee of the attorneys for respondent. She was used only as a nominal plaintiff to cover the corporate interest of respondent in the litigation. When she took the assignment of the Berges judgment respondent paid her the money to pay Berges. Her knowledge must be assumed to be that of her principal. Respondent's knowledge of the agreement *claimed* by Bianchi was fully proved by the testimony of Bianchi and in that respect the trial court found the testimony true. The evidence is that before respondent, through Nelson, purchased the Berges judgment Bianchi informed them and their counsel of his version of the agreement, that when he learned that Hatch threatened to repudiate it he offered to go directly to Hatch to clear the matter up but was urged by respondent's counsel not to do so. There can be no question therefore that both respondent and Nelson had full knowledge of Bianchi's contention as to the purport of the agreement before they purchased the Berges judgment, and that they were at least put upon notice.

As consideration for the agreement Hatch was able to levy upon assets of the Silbermans because of which they deposited the release bond of Century Indemnity Company. Because of this bond, and not otherwise, respondent was able to recover judgment in excess of $9,000 upon an outlay of less than $6,000, which represented an investment at 7 per cent interest. We may take notice that this was a profitable investment for the period following February 21, 1930, the date of the purchase.

If we are not correct in assuming that by the amendment to paragraph twenty-four of the findings it was intended to find that the Hatch-Bianchi agreement was made as testified to, but that Hatch was without authority to make it, then the finding must be deemed amended accordingly as there is no evidence to support it in its present form. Since all

the uncontradicted evidence shows that such agreement was made, that knowledge thereof was conveyed to Berges's assignee, and that all the parties affected by the agreement retained the fruits of it, it must be held that the respondent is now estopped from repudiating the agreement and that the equities demand a reversal of the judgment. For this reason it is not necessary to discuss the several other grounds raised by appellants.

The judgment is reversed.

Goodell, J., and Dooling, J. pro tem., concurred.