[L. A. No. 21481. In Bank. Dec. 27, 1950.]

OSCAR J. JOSEPH et al., Appellants, v. FLORENCE
DREW et al., Respondents.

Hindin, Girard, Lewis & Green for Appellants.

Aaron Sapiro for Respondents.

SPENCE, J.—This case presents for consideration the propriety of the trial court's denial to plaintiffs of recovery for the reasonable value of architectural services rendered to defendants. The determinative issue in adjudication of the validity of plaintiffs' claim is the purport of the state licensing requirements for the practice of architecture. Plaintiffs maintain that the law does not preclude the enforcement of their right to compensation; and the record, in the light of the pertinent statutory provisions, sustains plaintiffs' position.

Plaintiffs are architects licensed to practice in California. Prior to October 12, 1946, they had an associate, P. B. Fletcher, who was a licensed building contractor but not an architect. Under the name of Joseph, Fletcher and Joseph, a copartnership, the three men rendered architectural and building contracting services to the general public. Fletcher died on October 12, 1946, and thereafter plaintiffs proceeded to liquidate the partnership, continuing in business under the name of Joseph and Joseph and limiting their activities to the performance of architectural services.

During the existence of the partnership, defendants retained the firm to prepare plans and specifications for the construction of several proposed buildings. From time to time defendants paid the partnership on account of such services a total sum of $1,254.50. Plaintiffs brought the present action to recover the balance remaining due. By their answer defendants denied all liability and urged, as a separate defense, that since Fletcher was not an architect, "plaintiffs were not legally competent or entitled to accept or collect any fees" for architectural services performed "as members of the [partnership]." Defendants also filed a cross-complaint, seeking recovery of the money they had paid on account.

Upon the trial, plaintiffs conceded that their advertising and other contacts with the general public having reference to the partnership name, carried the words "Architectural

and Mechanical Engineering," and that the firm was listed in the telephone directory as "Architects." From the exhibits introduced at the trial, it appears that the partnership was simply designated "Joseph, Fletcher and Joseph, Architecture-Engineering" upon the many drawings, plans, and specifications submitted by the partnership to defendants but that the blueprint plan submitted to the City Building Department carried the added descriptive identification as follows: "O. G. Joseph, Architect and Civil Engineer; Graeme Joseph, Architect; License C-483, C-583, and 6382." All of the architectural work done for defendants was actually performed by plaintiffs, licensed architects. It was stipulated and the court found that the partnership rendered architectural services to defendants of the reasonable value of $4,644. However, the court further found that the firm was not entitled to collect any compensation for such services and gave judgment in favor of defendants on their cross-complaint for the money they had paid on account. Plaintiffs have appealed, urging that the trial court erred in its refusal to recognize the validity of their claim.

The following provisions of the Business and Professions Code are pertinent to the issue of the legality of plaintiffs' claim. Section 5536 declares it a "misdemeanor, punishable by . . . fine . . . or by imprisonment . . . or by both . . .," for any person, without a certificate, to practice architecture in this State or to advertise or put any sign or card or other device which might indicate to the public that he is an architect or that he is qualified to engage in the practice of architecture." Section 5539 provides: "This chapter does not prevent an architect from forming a partnership with persons who are not architects but the name of the architect shall appear as the architect on all instruments of service and in no case may the other members of the partnership be designated as architects."

Plaintiffs do not dispute the settled rule in this state, enunciated in *Wood* v. *Krepps*, 168 Cal. 382, at page 386 [143 P. 691, L.R.A. 1915B 851], as follows: "[W]hen the object of the statute or ordinance in requiring a license for the privilege of carrying on a certain business is to prevent improper persons from engaging in that particular business, or is for the purpose of regulating it for the protection of the public . . ., the imposition of the penalty amounts to

a prohibition against doing the business without a license and a contract made by an unlicensed person in violation of the statute or ordinance is void." But, as plaintiffs argue, an analysis of the factual situation here shows that this case does not come within the purview of the cited rule.

Plaintiffs, as licensed architects, were expressly authorized to form a partnership with an unlicensed person, and such association or firm was not required as such to procure a license for the doing of business. (§ 5539.) Accordingly, the licensing requirements applicable to the practice of architecture must be differentiated from the provisions governing the business of a building contractor (Bus. & Prof. Code, ch. 9, § 7000 et seq.), whereby an additional partnership license is necessary for its lawful pursuit of the contracting business (§ 7029), and a clear failure to so comply with the law will preclude its recovery of compensation for the work and services performed while so unlicensed (§ 7031). (See *Loving & Evans* v. *Blick,* 33 Cal.2d 603, 607 [204 P.2d 23].) Here plaintiffs were certificated architects pursuant to the statutory regulation (§ 5536) and as members of the firm so individually licensed "to practice architecture," they concededly performed for defendants all the architectural services here involved. So distinguishable is the line of cases on which defendants rely, where an unlicensed architect sought compensation for architectural services rendered and the claim was denied because of a failure to comply with the statutory law. (See *Force* v. *Hart,* 209 Cal. 600, 605 [289 P. 828]; *Payne* v. *DeVaughn,* 77 Cal.App. 399, 403 [246 P. 1069]; *Jones* v. *Wickstrom,* 92 Cal.App. 292, 295-296 [268 P. 449]; *Meyer & Holler* v. *Bowman,* 121 Cal.App. 112, 114-115 [8 P.2d 936]; *Baer* v. *Tippett,* 34 Cal.App.2d 33, 35 [92 P.2d 1028]; *Cash* v. *Blackett,* 87 Cal.App.2d 233, 237 [196 P.2d 585].)

 Nor does it appear that in its business dealings with defendants, under authority of section 5539, the partnership failed to meet the statutory requirement of identifying the architects in the firm on "all instruments of service." In aid of the court's interpretation of these words according to their use and understanding in the profession (Civ. Code, §§ 13, 1645; Code Civ. Proc., §§ 16, 1861; 23 Cal.Jur. § 125, p. 750), plaintiff Oscar Joseph, as a duly qualified and competent witness, testified as follows: That the term "instruments of service" has a generally accepted meaning when used in connection with the architectural profession; that as so used the term refers to the "final" plans and specifications "util-

ized for the actual construction of the building" as distinguished from "preliminary" sketches and drawings. Upon this basis of differentiation, he designated the abovementioned blueprint submitted to the City Building Department as the "final" document carrying the required "legend" in identifying plaintiffs as the licensed architects in the partnership. No effort was made to impeach this witness and his testimony stands uncontradicted in the record. (Code Civ. Proc., § 1844.)

It is the general rule that "the uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted as proof of the fact." (10 Cal.Jur. § 362, p. 1143; *Estate of Warner*, 167 Cal. 686, 690 [140 P. 583]; *Hynes* v. *White*, 47 Cal.App. 549, 552 [190 P. 836].) While there are exceptions to this rule, the fact to which the witness testified here concerned the generally accepted meaning of a phrase when used in connection with the architectural profession. Under such circumstances, the rule is peculiarly applicable for if it was claimed that the witness did not speak the truth, contrary evidence concerning such generally accepted meaning would have been readily available through any of the numerous members of that profession, and yet none was called.

Defendants nevertheless argue that the term "instruments of service" should be construed as an "all-inclusive" phrase, covering plans, drawings, specifications and other data relating to the practice of architecture—in short, all written instruments issued by the architect. But the definition of this term was an issue before the trial court, and the only evidence offered on its interpretation was that introduced by plaintiffs as above recited, whereby it was declared to have an "accepted meaning," according to the "custom of [the] profession," to refer to a "final instrument as distinguished from a preliminary sketch," and the blueprint submitted by the partnership to the City Building Department, with the "legend" identifying its preparation by plaintiffs as licensed architects, was so differentiated from the "preliminary" working papers. A reading of the code sections cited by the parties wherein the term in question appears (Bus. & Prof. Code, §§ 5537, 5538, 5539, 5586) does not militate against plaintiffs' contention that the Legislature used it as a "term peculiar to the architectural profession." Accordingly, the uncontradicted evidence introduced by plain-

tiffs in establishing its restricted meaning in relation to architectural services "cannot be arbitrarily disregarded." (*Fidelity & Casualty Co.* v. *Abraham,* 70 Cal.App.2d 776, 782 [161 P.2d 689] ; see, also, *Gomez* v. *Cecena,* 15 Cal.2d 363, 366 [101 P.2d 477].) As the term is so defined, the partnership satisfied the condition imposed by said section 5539 by designating the names of the architects, together with their license numbers, upon the final blueprint. While the court found, pursuant to the testimony of defendant John Drew, that defendants had not seen such blueprint, the cited statute did not require the partnership to so exhibit it, and its omission in this regard cannot avail defendants here.

■ Defendants also argue the significance of the partnership's claimed noncompliance with the requirement of section 5537, by failing to notify them "in writing" that Fletcher, as a member of the partnership furnishing the plans and specifications to defendants, was not a licensed architect. But that section does not purport to have application here. Rather it appears as a condition relating solely to "uncertificated persons" who seek the enforcement of their compensation claim for architectural services which they have performed, and providing for such recovery if the requisite notice is given to the recipient of the services. (See *Baer* v. *Tippett, supra,* 34 Cal.App.2d 33, 39-40.) Here plaintiffs as licensed architects seek recovery only for architectural services which they, as members of the partnership, personally rendered to defendants; and neither is any claim made that the unlicensed member, Fletcher, performed any architectural services for defendants, nor is compensation sought therefor. The partnership, formed under authority of statute, had only to meet the conditions so expressly imposed: (1) identifying on "all instruments of service" the members of the firm who were architects and (2) "in no case" designating "the other members . . . as architects" (§ 5539). Under such circumstances, the cited section appears to be complete in itself as a statutory regulation governing the authorized business entity, and there would be no ground for engrafting therein a condition having reference to a different factual situation (§ 5537).

■ No purpose would be served by section 5539 in authorizing licensed architects to form a partnership with an "unlicensed person" unless it was intended to permit just such business dealings as the partnership conducted with defendants here. While the partnership used in its advertising the full firm name of "Joseph, Fletcher and Joseph,"

accompanied by the words "Architectural and Mechanical Engineering," and while the partnership was listed in the telephone directory as "Architects," it does not seem reasonable to conclude that such mere identification of the firm's membership and the scope of the firm's services should be held to amount to the designation of the unlicensed person, Fletcher, as an architect within the meaning of section 5539. It has been said of the original act regulating the practice of architecture (Stats. 1901, p. 641) : "The invasions it makes on constitutional rights are not be carried farther than is necessary to protect the public from the evils intended to be removed, unless the language compels such meaning and such effect is reasonably calculated to secure the legitimate objects for which the power is exercised." (*Binford* v. *Boyd,* 178 Cal. 458, 462 [174 P. 56].) Applying the same principles in the interpretation of the present statutes, there appears to be nothing in the language which compels the conclusion that plaintiffs should be denied recovery for the reasonable value of the services which they, as duly qualified architects under the state licensing law, have performed for defendants. Accordingly, plaintiffs are entitled to recover the reasonable value of their architectural services as found by the trial court to be $4,644, less the credit of $1,254.50 paid on account by defendants, or $3,389.50.

It therefore appears appropriate to reverse the judgment with directions, and consistent therewith, to reverse the order denying plaintiffs' motion to vacate said judgment, from which order plaintiffs have likewise appealed. Plaintiffs' purported appeal from the order denying their motion for a new trial should be dismissed, as such order is nonappealable. (2 Cal.Jur. § 34, pp. 173-174.)

The purported appeal from the order denying a new trial is dismissed. The judgment and the order denying the motion to vacate the judgment are reversed, with directions to the trial court to enter judgment in favor of plaintiffs in the sum of $3,389.50, with interest.

Gibson, C. J., Shenk, J., Edmonds, J., and Traynor, J., concurred.

Schauer, J., concurred in the judgment.

CARTER, J.—I concur in the judgment of reversal, as I can see no valid distinction between the position taken by

plaintiffs in the case at bar and the legal theory advanced in my dissenting opinions in the cases of *Loving & Evans* v. *Blick*, 33 Cal.2d 603, 617 [204 P.2d 23], and *Franklin* v. *Nat C. Goldstone Agency*, 33 Cal.2d 628, 633 [204 P.2d 37]. The attempt by the majority to distinguish the case at bar from the last cited cases is so tenuous and hypertechnical that it amounts to the splitting of hairs.

Respondents' petition for a rehearing was denied January 25, 1951.