[Civ. No. 18006.   Second Dist., Div. One.   June 28, 1951.]

IDELL A. BATEMAN, Appellant, v. SAMUEL O. LONG, Respondent.

Marshall Denton, Jr., for Appellant.

David H. Cannon, Cannon & Callister and Reed E. Callister for Respondent.

WHITE, P. J.—Plaintiff brought an action for the cancellation of a promissory note and deed of trust. Defendant Samuel O. Long, into whose hands the instruments had passed, filed an answer, and by cross-complaint sought foreclosure and declaratory relief. Trial before the court, sitting without a jury, resulted in findings and judgment in favor of defendant and cross-complainant. Plaintiff has appealed from the judgment.

Appellant urges that the findings are not supported by the evidence; that the judgment is not supported by the findings; that the evidence does not support the judgment; and that the judgment is contrary to law. All of these contentions, upon examination of the record, resolve themselves into a single argument, to wit, that the evidence does not support certain findings of fact. The trial court found that Samuel O. Long was a holder in due course of the promissory note secured by a deed of trust, and if this finding is supported by substantial evidence, appellant cannot prevail.

It appears that about April 6, 1948, plaintiff signed a promissory note for $3,600, payable to Golden State Construction Company, and secured by a deed of trust upon her property at 2717 Council Street, Los Angeles. These instruments were executed and delivered in connection with a contract between appellant and Golden State Construction Company for the remodeling of appellant's premises, which contract had been made about January 30, 1948. After signing the note and trust deed appellant left them with James H. Lewis, secretary of Golden State Construction Company in the office of that company. Appellant testified that the note and trust deed were to be placed in an escrow. She

testified that she never acknowledged execution of the trust deed before a notary public.

The note and trust deed were assigned on April 16, 1948, by Golden State Construction Company, through Cordia F. Cotton as president and James H. Lewis as secretary, to Mortgage Discount Company, a partnership consisting of George A. Rubens and George L. Myers. It appears that this transfer was made as collateral security for the payment of a $1,500 note of Golden State Construction Company held by Mortgage Discount Company. On August 28, 1948, there was a balance of $1,316.06 due on the $1,500 note. On this date the $1,500 note was paid in full and the note and trust deed executed by appellant were transferred by Mortgage Discount Company to respondent, Samuel O. Long. The note and trust deed had been recorded in the office of the County Recorder of Los Angeles County on April 19, 1948.

The remodeling of appellant's premises was hampered by various delays, due chiefly to lack of funds. Between January 30, 1948, and October 13, 1948, appellant paid $3,000 to Golden State Construction Company and advanced another $1,500 to cover labor and materials. Appellant testified that the value of the work done did not exceed $2,500. On May 17, 1948, Cordia F. Cotton agreed in writing to reimburse appellant for loss of rent because of Golden State's failure to complete the contract on time, and made a second such agreement on June 21, 1948.

It is undisputed that appellant executed the note and deed of trust and left them in the office of Golden State Construction Company with an officer thereof. The court found that appellant left an unacknowledged deed of trust and promissory note with James H. Lewis, and that it was not true that there was any agreement that the documents should be placed in escrow and delivered only after completion of the repairs. It was further found that the defendants did not fraudulently procure the notarization of the deed of trust. Appellant attacks these findings apparently on the ground that the court was bound to believe appellant's testimony that she did not acknowledge the execution of the trust deed because it was uncontradicted. Assuming, but not deciding, that one in appellant's position, who has executed and delivered a note and trust deed, could urge a false acknowledgment as a defense against a holder in due course, appellant's contention with respect to the evidentiary ques-

tion involved is answered by the language found in *Jordan* v. *O'Connor,* 99 Cal.App.2d 632, 641 [222 P.2d 322], as follows:

"Appellant directs attention to the fact that appellant's testimony is not contradicted by that of any other witness and invokes the general rule that the testimony of such a witness may not be disregarded but should be accepted by the court or jury as proof of the facts adduced by that witness. This rule has its exceptions. Conflicts in the testimony of a witness must be resolved by the trier of the facts. The most positive testimony of a witness may be contradicted by inherent improbabilities as to its accuracy contained in the witness's own statements. There may be circumstances in evidence in connection with the matter which satisfy the court of the inaccuracy or falsity of that testimony. The manner of the witness in testifying may impress the court with a doubt as to the accuracy of his statement and influence it to disregard the witness's positive testimony as to a particular fact. It is the province of the trial court to determine what weight shall be given to the testimony of any witness. An appellate court cannot control the finding or conclusion of the trial court denying the testimony credence, unless it appears that there are no matters or circumstances which impair its accuracy. (*Young* v. *Tassop,* 47 Cal.App.2d 557, 561 [118 P.2d 371].)"

Appellant's attacks upon various other findings are sufficiently covered in the following discussion, which has to do with the one real issue in the case—whether or not Samuel O. Long was a holder in due course of the note and trust deed here involved.

Appellant in her statement of facts asserts that Marshall Denton, Jr., received a telephone call from respondent between the 25th and 28th of August, 1948, in which respondent stated that he desired to buy the note and trust deed, and that respondent was then informed that the note had been executed upon an understanding that it was to be delivered out of escrow when the repair work was completed, and was advised not to make the purchase. The record, however, contains testimony by respondent contradictory of the foregoing assertion, from which testimony it appears that respondent talked with Mr. Denton (appellant's counsel) prior to purchasing the note, in which respondent stated that Mr. Cotton wanted him to buy a second mortgage on the property and asked Mr. Denton the amount of the first mortgage, to which Mr. Denton stated that it was $3,000 "and that there was some other small claim, but there were subsidiary means for

taking care of that, and the $3,600.00 note should be good.'' Respondent testified that on the day he acquired the note and trust deed he paid $1,316.06 (the balance due on the $1,500.00 note), ''and a thousand dollars and several other—I don't know just exactly—something over $3,000 it amounted to.''

Appellant appears to make some point of the manner in which the sale to respondent was consummated. Mr. Cotton, accompanied by Mr. Long, appeared at the office of Mortgage Discount Company on August 28, 1948, and stated to Mr. Rubens that he was selling the trust deed and note to Mr. Long. Mr. Long inquired as to the amount of the first trust deed and also as to insurance. Mr. Cotton instructed the bookkeeper to make an assignment to Mr. Long. It appears to be appellant's contention that because the $1,500 note was paid, and the collateral security thereby redeemed the pledgee's special property in the pledged security became extinguished, and that therefore respondent could not be a holder in due course under an assignment from the pledgee. In this contention appellant overlooks two facts: first, that the assignment was made at the direction of an officer of the pledgor; second, that the assignment appearing on the note and trust deed to Mortgage Discount Company was absolute in form, and hence respondent Long was entitled to rely upon the facts that the instruments were in the possession of Mortgage Discount Company and were regular on their face. Thus, whether the transaction is viewed as in substance a transfer from Golden State to Long after redemption of the pledge or as a transfer by Mortgage Discount Company as the apparent owner of the note and trust deed, the result is the same so far as a holder in due course is concerned. '' . . . where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed . . . .'' (Civ. Code, § 3097.)

Other contentions of appellant, including the argument that her transactions with Golden State Construction Company constituted payment of the note, can be answered by adopting the language of the trial judge in his remarks at the close of the trial, as follows:

''The lady (appellant) had known for some time, a couple of months at least prior to the time she first spoke to Mr. Denton, that the Mortgage Discount Company claimed to be the owner and holder of that note. She didn't go to Mr. Denton about it, she didn't give any notice; she was satisfied

to talk on the phone to somebody. She then, according to her testimony, went to Mr. Denton, apparently around the middle of August or perhaps the 21st of August, according to his testimony, and thereafter nothing was done insofar as the Mortgage Discount Company was concerned; no notice given, no attempt to protect, no lis pendens, no action. But, according to the testimony, at the same time they were still dealing with Cotton and Lewis to have them complete the job, and in September and October, under her agreement with Cotton and Lewis, Mrs. Bateman did advance $1,500.00 more to the material men and labor men that were supplied or obtained by Cotton and Lewis. Now, that lends a great deal of credence to the contention or to the testimony as given that it was the intention of Mrs. Bateman to allow Cotton and Lewis to use this note and trust deed to raise money for the purpose of completing the job. And to use it, they would have to hypothecate it. Now, it may not have been her idea originally to do that, although the contract so indicates, but to the Court it appears that either originally or prior to August 28th, either she or Mr. Denton and she had come to the conclusion that the best thing for her interests was to get all they could out of Lewis and Cotton, get that job completed so it could be rented and bring in an income; whether or not the note and trust deed were not to be delivered until completion, to allow them to have it and to go on with their hypothecation. Otherwise I can't understand why Mr. Denton, as her attorney, did not immediately take proper steps to notify the Mortgage Discount Company and file whatever action might be necessary to protect the lady against someone being a holder in due course of the note and trust deed.''

There is substantial evidence in the record to sustain the finding that Long purchased the note and trust deed in good faith, for value, and without knowledge of any claimed infirmity. The note was not in default of payment at the time of his purchase. Claimed contradictions or inconsistencies in the evidence presented questions for the determination of the trier of fact and the trial court's conclusions in this regard may not be disturbed on appeal if there be any substantial evidence to support them. The respondent paid a valuable consideration for the note. The question of his good faith was one of fact, to be determined from a consideration of all the evidence, and is therefore governed by the familiar rule that this court is without power to disturb the finding made by the trial court who saw and heard the wit-

nesses, observed their demeanor and manner of testifying, and determined that respondent acted in good faith. (*Harris* v. *Pollack*, 101 Cal.App.2d 26, 31 [224 P.2d 824].)

The attempted appeal from the order denying the motion for a new trial is dismissed. The judgment is affirmed.

Doran, J., and Drapeau, J., concurred.