[Civ. No. 21591.   Second Dist., Div. Two.   Aug. 2, 1956.]

L. S. HUTCHINSON, Appellant, v. CONTRACTORS' STATE LICENSE BOARD et al., Respondents.

Harold Drooz and Max M. Gilford for Appellant.

Edmund G. Brown, Attorney General, and Edward M. Belasco, Deputy Attorney General, for Respondents.

MOORE, P. J.—Appeal from a judgment of the superior court denying a writ of mandate to compel respondents to set aside an order revoking appellant's license as a contractor.

On June 11, 1954, an investigator for the Contractors' State License Board filed an accusation against appellant Hutchinson alleging that he had violated sections 7107, 7108, 7109, 7110, 7116, 7119 and 7121 of the Business and Professions Code in the construction of an addition to the home of Lida Donnell and the building of a home for Dr. L. Z. Livingston, both in Twentynine Palms. A hearing was held on the charge during which the hearing officer visited both premises and inspected the constructions. That officer found that Hutchinson had violated section 7108 by diverting funds received from both Donnell and Livingston for the prosecution and completion of their homes; violated section 7109 by wilfully departing from plans and specifications of both

owners to their material injury; violated section 7110 by wilfully disobeying building ordinances of the county of San Bernardino; and violated section 7116 by performing wilful acts to the substantial injury of another.[1] Pursuant to his findings, the hearing officer recommended disciplinary action by respondents. The proposed decision was accepted by the license board and appellant's license was revoked. Appellant then procured an alternative writ of mandate from the superior court, in accordance with which a trial was had which consisted of a review of the administrative record since Hutchinson had had, before that board, full opportunity to produce evidence in his own behalf. (Code Civ. Proc., § 1094.5.)[2] The superior court found that the Registrar of Contractors afforded petitioner a full and fair hearing; did

[1]Business and Professions Code:

Section 7108: ''Diversion of funds or property received for prosecution or completion of a specific construction project or operation, or for a specified purpose in the prosecution or completion of any construction project or operation, and their application or use for any other construction project or operation, obligation or purpose constitutes a cause for disciplinary action.''. (Added Stats. 1939, ch. 37, p. 393, § 1.)

Section 7109: ''Wilful departure from or disregard of, plans or specifications in any material respect, and prejudicial to another without consent of the owner or his duly authorized representative, and without the consent of the person entitled to have the particular construction project or operation completed in accordance with such plan and specifications constitutes a cause for disciplinary action.''

Section 7110: ''Wilful or deliberate disregard and violation of the building laws of the State, or of any political subdivision thereof, or of the safety laws or labor laws or compensation insurance laws of the State, or violation by any licensee of any provision of the Health and Safety Code or Water Code, relating to the digging, boring, or drilling of water wells constitutes a cause for disciplinary action.''

Section 7116: ''The doing of any wilful or fraudulent act by the licensee as a contractor in consequence of which another is substantally injured constitutes a cause for disciplinary action.''

[2]Code of Civil Procedure, section 1094.5:

'' (a) Where the writ is issued for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer, the case shall be heard by the court sitting without a jury. All or part of the record of the proceedings before the inferior tribunal, corporation, board or officer may be filed with the petition, may be filed with respondent's points and authorities or may be ordered to be filed by the court. If the expense of preparing all or any part of the record has been borne by the prevailing party, such expense shall be taxable as costs.

'' (b) The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is

not proceed without or in excess of his jurisdiction; determined issues and made his order and decision in accord with and supported by the findings of fact; found in accordance with the weight of the evidence; was not arbitrary, capricious, excessive, extreme, or unreasonable in revoking petitioner's license; proceeded at all times in the manner required by law. Pursuant to such findings, the court concluded that the decision and order should not be set aside but should remain in full force and effect.

Appellant claims that no substantial evidence exists to support the findings of the superior court. A reweighing of the evidence adduced at a hearing conducted by a statutory, state-wide administrative agency which results in the revocation of a license to pursue a common calling is the function of the superior court in a mandamus action, and the superior court makes its own findings of fact after reweighing the evidence. (*Moran* v. *Board of Medical Examiners*, 32 Cal.2d 301, 308 [196 P.2d 20]; *Dare* v. *Board of Medical Examiners*, 21 Cal.2d 790, 795 [136 P.2d 304]; *Ashdown* v. *State*, 135 Cal.App.2d 291, 299 [287 P.2d 176].) Where, as here, the superior court does reweigh the evidence and make independent findings, the only function of the appellate court is to determine whether those findings are supported by substantial evidence. (*Moran* v. *Board of Medical Examiners, supra,* at page 308; *Ashdown* v. *State, supra,* at page 299.)

### DIVERSION OF FUNDS

On June 17, 1953, appellant entered into a written contract with Lida Donnell concerning alterations to be made on her home. The brief instrument provided that Hutchinson should "furnish all materials and perform all labor .... in a substantial and workmanlike manner according to standard practices for the sum of $684." Miss Donnell testified that she paid appellant $525 of such sum. She was not contradicted

not supported by the findings, or the findings are not supported by the evidence.

"(c) Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence; and in all other cases abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record.

"(d) Where the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced ... at the hearing ... the court may admit such evidence at the hearing on the writ without remanding the case."

but on the contrary was corroborated by a writing of appellant. He had incurred a bill of $280.94 at the Oasis Lumber Company for lumber purchased to be used on the Donnell project. Although he was regularly billed for this debt by the lumber company, he made no payments thereon. As a result, the lumber company pressed Donnell for payment of the bill. Appellant's contention on appeal is that both the administrative agency and the superior court refused to accept as true the entries on certain ledger sheets submitted by him into evidence. He argues that he had in fact spent more on Miss Donnell's repairs than he had received and therefore could not possibly have diverted any funds. The ledger sheets offered by appellant, which include records of considerable sums spent for such vague items as "payroll" even though specific payments to various artisans are otherwise listed, are no more conclusive than appellant's own testimony. Even though at the hearing the investigator for the Contractors' Board had no specific evidence as to whether appellant had indeed spent the funds on the "payroll" of the Donnell job, neither the agency nor the lower court was obliged to accept appellant's word. (*People* v. *Kirk*, 98 Cal. App.2d 687, 692 [220 P.2d 976].) While uncontradicted evidence cannot be arbitrarily rejected (*Joseph* v. *Drew*, 36 Cal.2d 575, 579 [225 P.2d 504]) there was enough in appellant's testimony to justify the examiner and the court in disbelieving and discarding it. (*Bateman* v. *Long*, 105 Cal.App.2d 173, 176 [233 P.2d 19].) But the rejection of testimony does not create evidence contrary to that which is deemed untrustworthy. "Disbelief does not create affirmative evidence to the contrary of that which is discarded. 'The fact that a jury may disbelieve the testimony of a witness who testifies to the negative of an issue does not of itself furnish any evidence in support of the affirmative of that issue, and does not warrant a finding in the affirmative thereof unless there is other evidence in the case to support such affirmative.' (*Marovich* v. *Central Calif. Traction Co.*, 191 Cal. 295, 304 [216 P. 595].) To this same effect are *Edwards* v. *Freeman*, 34 Cal.2d 589, 593 [212 P.2d 883]; *Moore* v. *Chesapeake & Ohio Ry. Co.*, 340 U.S. 573, 576 [71 S.Ct. 428, 95 L.Ed. 547]; *Bunt* v. *Sierra Butte Gold Min. Co.*, 138 U.S. 483, 485 [11 S.Ct. 464, 34 L.Ed. 1031] . . . The fact that one testifies falsely may, and usually does, afford an inference that he or she is concealing the truth but it does not reveal the truth itself or warrant an inference that the

truth is the direct converse of the rejected testimony.'' (*Estate of Bould*, 135 Cal.App.2d 260, 264-265 [287 P.2d 8, 289 P.2d 15].) ██ As there was no affirmative evidence that appellant had diverted any of the moneys paid him by Miss Donnell, the finding of a violation of section 7108 cannot stand.

The state of the evidence on the Livingston charge is exactly the same as is that in the case of Donnell. Notwithstanding appellant's receipt of funds sufficient to pay specified materials bills, nevertheless he refused to pay them. Again, there are the ledger sheets which indicate that Hutchinson actually paid out more than he had received.

Rejection of appellant's testimony with respect to the Livingston matter leaves the finding of diversion of funds without substantial evidentiary support.

FAULTY WORKMANSHIP

(1) *Donnell Job.*

The trial court found that although there were numerous defects in Donnell's addition when first ''completed'' by appellant, Hutchinson under the pressure of the pending accusation and hearing against him had scurried about correcting his slovenly work. The hearing officer apparently interpreted *Terminix Co.* v. *Contractors' State License Board*, 84 Cal.App.2d 167 [190 P.2d 24], as requiring only a consideration of those defects which still exist at the date of the hearing. Actually, that case holds only that where the contractor had entered into a satisfactory settlement with the complaining home-owner *prior to the filing of the accusation*, the homeowner had suffered no substantial injury which is required before there is a violation of section 7110. (*Terminix Co.* v. *Contractors' State License Board, supra*, p. 172.) At any rate, in the instant matter it was found that the exterior stucco on a small portion of the building was cracking excessively and that a very large crack was present between the frame and sash in one of the windows. The existence of these conditions was testified to by Miss Donnell and was observed by the hearing officer. Appellant now argues that the section of the wall complained of was ''too narrow for the proper application of plaster.'' It is not practicable for an appellate court to speculate on how large a section of wall must be in order for plaster properly to adhere. Appellant offered no evidence for the purpose of excusing the failure of his stucco. As to the crack between the sash and frame,

appellant exaggerates the effect of the act of Miss Donnell in forcing paper into the aperture to keep out the weather and that the paper became wet, swelled and further enlarged the opening. Appellant's counsel interrogated the accusing investigator at the hearing and elicited that Donnell should have weatherstripped the crack from the outside. However, it is not a very persuasive argument to say that appellant should be excused because Miss Donnell did not meet such situation as would the average, reasonable, building contractor when confronted by a desert wind whistling through her dining room.

### (2) *Livingston Job.*

Here again much inferior workmanship was disregarded at the hearing because appellant had succeeded in repairing the damage before the date of the hearing. Nevertheless, certain defects in the Livingston home still existed as found by the hearing officer and the trial court. In each instance, the facts were developed by the testimony of Dr. Livingston and Mr. Fernald, a building inspector for San Bernardino County, and were observed by the hearing officer. In the first place, the redwood siding was improperly applied as a result of which the siding admits the rain. Appellant argues that the redwood he was forced to use by Livingston had been left over from a prior job by another contractor and not only was of poor quality, but had been warped by the sun. But the hearing officer was able to view the scene and he rejected appellant's contention. It is impossible to determine here what leakage resulted from inferior material and what followed its improper installation.

A roof overhang was improperly supported and consequently it sags and is not plumb. Appellant points out that he had nothing to do with the plans and specifications and claims that since the plans called for no support, no support it was. Since no drawings or blueprints are contained in the record on appeal, no evidence substantiates appellant's contention.

Louver glass windows were installed in such a manner that a wide space was left between the ends of the louver and the metal window frame, with the result that they are not weather tight but, on the contrary, admit an excessive amount of air. Appellant claims that louver windows come in integral units from the factory, and that the method of installation has nothing to do with the gap between the louver and the metal

frame. Apparently the hearing officer who viewed the windows felt otherwise. Dr. Livingston's testimony, taken on the premises, discloses that at least one of the louvered windows was installed in such a manner that there was *no such gap*. Furthermore, she pointed out to the hearing officer that the frames on the windows which leaked air had been bent. Hutchinson failed to install screens on the windows as he had by contract promised to do. He now pleads lack of funds as an excuse. However, such excuse is presented for the first time in his brief. At the hearing in Twentynine Palms, he professed that he could not remember whether he put any screens on the windows or not. Plumbing pipes enter the house through yawning holes which Hutchinson failed to cover with plaster. He contends that he was not hired to do the plumbing; and as to the holes being unplastered, "You don't plaster up to any pipe." Despite such contention, neither this court nor the trial court was presented with sufficient evidence of the impropriety of plastering around pipes to compel a reversal of the determination of the hearing officer who possesses much more experience in that field.

As a somber denouement to her many difficulties in securing the construction of her desert home, Dr. Livingston suffered condemnation of the structure by the building inspector of San Bernardino County immediately upon its completion. Because Dr. Livingston had no other place to live and had nearly exhausted her funds, she was not prevented from living in the house.

The registrar found that appellant had violated sections 7108, 7109, 7110 and 7116 "thereby subjecting his license to disciplinary action" and the order of revocation of his license was general, without any holding in substance or effect that each violation of the code committed by appellant was in itself sufficient cause for such severe discipline. In these circumstances, it is appropriate to reverse the judgment with instructions to the trial court to set aside the order and send the matter back to the board for reconsideration of the penalty (*Cooper* v. *State Board of Medical Examiners*, 35 Cal. 2d 242, 252 [217 P.2d 630, 18 A.L.R.2d 593]; *Bonham* v. *McConnell*, 45 Cal.2d 304, 306 [288 P.2d 502]; *Black* v. *State Personnel Board*, 136 Cal.App.2d 904, 912 [289 P.2d 863]; *Mast* v. *State Board of Optometry*, 139 Cal.App.2d 78, 91 [293 P.2d 148]).

The judgment is reversed insofar as it holds that appellant

has violated section 7108, Business and Professions Code, in the Donnell and Livingston matters, and the trial court is directed to enter judgment commanding respondent board to set aside its order of revocation and to reconsider and redetermine the penalty in the light of this court's opinion and judgment.

Fox, J., and Ashburn, J., concurred.