[Civ. No. 26387. Second Dist., Div. Four. Dec. 19, 1962.]

HARRY WILLIAMS et al., Plaintiffs and Appellants, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Defendant and Respondent.

MERTON R. MEAD, Plaintiff and Appellant, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Defendant and Respondent.

Kean & Engle and R. W. Engle for Plaintiffs and Appellants.

Robert W. Walker, J. H. Cummins and Matthew H. Witteman for Defendant and Respondent.

. BURKE, P. J.—On November 15, 1958, at approximately 3 a. m., a truck and trailer driven by plaintiffs' agent collided

with defendant's freight train at a single spur track crossing in the Mojave Desert near the Township of Boron. Plaintiff Merton Mead, owner of the truck tractor, filed an action for property damage, and plaintiffs Harry and Ruth Williams filed a similar action as owners of the truck trailer. Both actions were consolidated for trial. Defendant filed a cross-complaint for property damage to its train. The trial court, sitting without a jury, found that plaintiffs' negligence was the sole proximate cause of the collision; and accordingly, judgment was entered in favor of defendant both as to the consolidated actions brought by plaintiffs and defendant's cross-complaint.

In the joint pretrial statement plaintiffs contended that the doctrine of last clear chance was applicable in the event that plaintiffs should be found chargeable with contributory negligence. On appeal plaintiffs concede that there was sufficient evidence to support the finding that plaintiffs, acting through their agent, were negligent. They contend, however, the evidence is insufficient to support a finding that their negligence was the sole proximate cause of the collision since the facts establish that the doctrine of last clear chance was applicable.

The applicability of the doctrine of last clear chance hinges upon certain testimony of the train engineer in charge, William Howland, who said he realized from his observation when the train was about 175 feet from the crossing that the brakes of the approaching vehicle were not taking hold; that he ordered Maxwell, an assistant who was actually operating the diesel locomotive, to apply the emergency brake when the engine was "touching the macadam" and the engine came to a complete stop within 40 feet blocking the entire highway. Plaintiffs urge that it was error for the trial court to ignore this testimony.

Plaintiffs contend that when engineer Howland noted the brakes of the approaching vehicle were not taking hold he had a "last clear chance" to avoid the accident but did not do so. Instead, Howland waited until the train was within a few feet of the crossing before ordering Maxwell to apply the brakes. Howland testified he arrived at the conclusion the truck brakes were not taking hold because he observed the approaching vehicle slow down and then start out again. When asked why he didn't apply the emergency brakes at that time, Howland testified he observed the truck "was slowing down like some of them do when they come up and make what you call a grandstand stop."

Howland testified he first observed the headlights of plaintiffs' vehicle when it was about one mile away; he reported this observation to Maxwell; he again mentioned the approaching vehicle to Maxwell when the train was about 1200 feet from the crossing and again about 200 feet from the crossing, and it was when the train was about 175 feet from the crossing he realized the truck's brakes were not taking hold. Howland also testified both the engine bell and whistle were sounded from within 300 feet of the crossing; the stationary dual sealed beam headlights on the engine were burning; the side of the engine was painted with luminous white stripes; there were lights burning over each group of wheels on the engine, in addition to a classification light and a number of lights at the rear of the engine; and he lit two fuses and used one of them for the purpose of making sure the approaching vehicle would see the train.

Maxwell, who was operating the locomotive, testified the train was traveling at a speed of 10 miles per hour just prior to the impact which was a decrease of two to three miles per hour from its previous speed; he saw the lights of the approaching vehicle when he was about 1000 feet from the crossing; the bell and whistle were continuously sounded from 250 to 300 feet from the crossing; and the emergency brake was not applied until Howland called for it. Maxwell testified concerning a post-accident conversation with the driver of plaintiffs' truck and trailer in which the driver said he saw the train lights and the flares and heard the whistle, but his brakes had failed. The chief engineer, Howland, also testified as to having overheard the truck driver's admission concerning the failure of his truck's brakes. Both the conductor and brakeman testified they also heard the truck driver's admission.

An investigating highway patrol officer testified the truck driver told him he had seen the train lights and thought it had stopped; that when he saw the reflectorized sign he reduced his speed to 30 miles per hour.

The head brakeman, Bobby Alfred, testified he saw plaintiffs' approaching vehicle when he was 300 feet from the highway and that engineer Maxwell was aware of its approach.

 The driver of plaintiffs' vehicle testified he saw the railroad crossing reflector warning sign and slowed down from 45 to 30 miles per hour; he did not recall looking in either direction to see if a train was approaching; he first saw the train, and then only the two lights over the wheels of the engine, when he was within 150 to 200 feet of the crossing;

and he then immediately began to apply the brakes. He further testified that the headlights of his truck shine approximately 1200 feet ahead of him and he would usually allow 600 feet for a normal stop at 30 miles per hour. He stated he had no recollection of the post-accident conversation in which he was said to have stated that his brakes failed.

It is true that testimony which is unimpeached, uncontradicted, unambiguous and entirely probable cannot be arbitrarily disregarded by the trier of fact. (*Mantonya* v. *Bratlie*, 33 Cal.2d 120, 127 [199 P.2d 677] ; *Dobson* v. *Dobson*, 86 Cal.App.2d 13 [193 P.2d 794].) This rule, however, does not preclude the trier of fact from resolving inherent conflicts in the testimony of a witness. ''The most positive testimony of a witness may be contradicted by inherent improbabilities as to its accuracy contained in the witness' own statements.'' (*Bateman* v. *Long*, 105 Cal.App.2d 173, 176 [233 P.2d 19] ; *Jordan* v. *O'Connor*, 99 Cal.App.2d 632, 641 [222 P.2d 322].)

There were a number of circumstances which would sustain the trial court's decision in weighing Howland's testimony. The two witnesses who were inside the engine with Howland testified they recalled his mentioning observing the approaching vehicle. However, they did not recall any mention by him of the more significant fact that the vehicle's brakes were apparently failing. Howland's statement that the truck's brakes appeared not to be holding was in one sense contradictory to his testimony that he didn't apply the emergency brake at that time because the truck was slowing down like some trucks do in coming to a ''grandstand stop.'' The trial court stated in the record he did not believe it likely that the engineer in charge would continue at the same speed knowing an approaching truck might not be able to stop. It is apparent from the trial judge's comments upon the conclusion of the case that he did not ignore Howland's testimony but in fact weighed it in the light of all the circumstances.

The credibility of witnesses and the weight to be given to their testimony is clearly a matter within the province of the trial court. (*Spurgeon* v. *Buchter*, 192 Cal.App.2d 198, 205 [13 Cal.Rptr. 354].)

Even if the doctrine of last clear chance were applicable, it too would involve questions of fact. (*Leonardini* v. *Atchison, Topeka & S.F. Ry. Co.*, 183 Cal.App.2d 552, 560 [6 Cal.Rptr. 798].) The trial court would have had to find

from the evidence: "(1) that the plaintiff was in a position of danger and, by his own negligence, became unable to escape from such position by the use of ordinary care, either because it became physically impossible for him to escape or because he was totally unaware of the danger; (2) that defendant knew that plaintiff was in a position of danger and further knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape therefrom; and (3) that thereafter defendant had the last clear chance to avoid the accident by the exercise of ordinary care but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure." (*Brandelius* v. *City & County of San Francisco*, 47 Cal.2d 729, 743 [306 P.2d 432].)

The trial judge concluded the evidence did not support such findings. There is substantial evidence to support his findings that the accident was due to negligence on the part of the truck driver which was the sole proximate cause of the accident.

Judgment affirmed.

Jefferson, J., and Ford, J.*, concurred.

*Assigned by Chairman of Judicial Council.