Filed 11/2/15  Raphael v. Rizk CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| YOUSSEF I. RAPHAEL,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GEORGE E. RIZK,<br><br>    Defendant and Appellant;<br><br>LAW OFFICES OF HENRY HADDAD, APC, et al.,<br><br>    Appellants. | B259417<br><br>(Los Angeles County<br>Super. Ct. No. KC061475) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Robert A. Dukes, Judge.  Affirmed.

Vakili & Leus, Sa'id Vakili, Robert M. Zabb, John A. Schlaff for Defendant and Appellant George E. Rizk.

Law Offices of Henry Haddad, Henry Haddad for Appellants Law Offices of Henry Haddad, APC, and Henry Haddad.

Law Office of Richard M. Foster, Richard M. Foster, Sylvia Saltanyan for Plaintiff and Respondent.

_____

The trial court imposed monetary sanctions on George Rizk and attorney Henry Haddad after they violated a court order directing the production of personal tax returns. (Code Civ. Proc., § 2023.010 et seq.)[1]  Sanctions were proper:  there was no justification for violating a discovery order.  This frivolous appeal warrants sanctions.  (§ 907.)

## FACTS

### *Youssef Raphael's Lawsuit*

In 1987, plaintiff Youssef Raphael, a resident of Lebanon, formed a California corporation called Caderex, Inc., in which he owned a 40 percent interest.  Jean Rizk was a 20 percent shareholder and a director and officer of Caderex; his brother George Rizk was the corporate secretary.[2]  In 1988, Caderex took title to real property in La Verne containing a service station.  Plaintiff provided cash, while Jean Rizk oversaw the day-to-day operations of the business, known as J.R. Shell.

In 2008, Jean and George Rizk conveyed the La Verne property owned by Caderex to themselves.  Plaintiff was unaware of this transfer.  George Rizk then dissolved Caderex, without authorization from the corporation's board of directors.  Plaintiff was deprived of his investment in Caderex by the Rizks' actions.  Plaintiff sued the Rizks and Caderex for fraud; constructive fraud; conversion; breach of fiduciary duty; intentional interference with prospective business advantage; and fraudulent conveyance.

### *The Discovery Disputes*

When plaintiff subpoenaed tax returns for Caderex, J.R. Shell and the Rizks in 2012, Rizk moved to quash on the grounds of privilege.  The trial court referred the discovery dispute to a retired judge, Gregory C. O'Brien, Jr.  (§ 639, subd. (a)(5).)  Based on recommendations in the referee's first report, the trial court ordered Rizk to produce Caderex's tax returns.

---

[1]     Unlabeled statutory references in this opinion are to the Code of Civil Procedure.

[2]     Jean Rizk died in 2008.  George Rizk is the estate's personal representative.  As used in this opinion, "Rizk" refers to George Rizk, unless otherwise stated.

In a second report, the referee recommended that Rizk be ordered (through his CPA, Roy McGarrell) to produce all business records, including tax records, for J.R. Shell, regardless of whether the records are in the name of Caderex, Jean Rizk, George Rizk, or the latter's spouse. The referee noted that George Rizk's "personal tax records may in fact be the only tax records for J.R. Shell after Jean's death. This problem may also extend to the tax records of Mrs. Rizk."[3] Rizk challenged the referee's second report. At a hearing on April 8, 2014, the trial court rejected Rizk's challenge to the production of his personal tax returns.

The deposition of CPA McGarrell was held, attended by the referee. McGarrell failed to produce tax documents, and Rizk raised more objections to the production of his tax returns. Plaintiff asked the referee to sanction Rizk for violating a court order.

### The Referee's Third Report and Related Court Order

The referee issued a third report regarding tax returns. He wrote, "I wish to advise the Court that I was frankly shocked by the testimony of Mr. McGarrell. The fact that he said he had not been instructed to bring the tax records of George Rizk, following the intensely litigated dispute over this matter strikes me as someone's defiance of a court order." The referee recommended that (1) McGarrell be ordered to bring all tax documents to a supervised deposition, (2) plaintiff's counsel be awarded $2,700, plus referee's and court reporter's fees, and (3) Rizk and his attorney be warned that any failure to produce documents may result in evidentiary or terminating sanctions.

Plaintiff submitted the third report to the trial court, along with a request for discovery sanctions in the amount of $7,673.80. Rizk contested the referee's third report, arguing that he should not have to produce his personal tax returns because they do not contain tax information regarding J.R. Shell. Rizk maintained that the tax records of J.R.

---

**3** Rizk's attorney Henry Haddad wrote a letter stating, "J.R. Shell does not file a tax return on its own but [its income] is included in the personal tax return of George E. Rizk." Rizk later claimed that this was "scrivener's error" and the income for J.R. Shell is not included in his personal returns.

3

Shell were already produced, and he should not be sanctioned because he has no control over McGarrell's failure to produce documents at a deposition. Rizk termed plaintiff's request for sanctions to be "exorbitant" and "unreasonable" as well as "unjustified."

The court ruled on the referee's third report on September 3, 2014. The court rejected Rizk's objections, reciting its April 2014 ruling that "'both Jean Rizk and George Rizk waived the [taxpayer] privilege by filing the business returns under their tax returns, an intentional act on their part. Further, the gravamen of this lawsuit is the wrongful conversion by Defendant George Rizk and his brother Jean Rizk of the assets of Caderex, which include J.R. Shell. Therefore, the gravamen of this lawsuit is inconsistent with the continued assertion of the taxpayer privilege. Finally, the purpose of the privilege is to encourage a taxpayer to make full and truthful declarations in his return. It is not to facilitate the taxpayer in perpetrating a fraud, [which] would be inconsistent with public policy.'" Also, the court listed a new reason: Rizk "fail[ed] to raise the objection to his own return in a timely manner," thereby waiving the privilege.

The court wrote that Rizk "ignor[ed] the court's earlier finding and rulings." The basis for the lawsuit—the Rizk brothers' unlawful conversion of Caderex's assets— remains unchanged. Rizk's continuing objections are inappropriate, given the allegations in plaintiff's complaint. The court awarded plaintiff sanctions of $9,173, payable by Rizk and his attorney, jointly and severally.

## DISCUSSION

### The Trial Court's Order Imposing Discovery Sanctions

Appeal lies from an interlocutory judgment or an order directing a party or an attorney to pay monetary sanctions of $5,000 or more. (§ 904.1, subd. (a)(11)-(12).) This applies to sanctions imposed for discovery abuse. (*Rail-Transport Employees Assn. v. Union Pacific Motor Freight* (1996) 46 Cal.App.4th 469, 471-475; *Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1432; *Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 868.)

The court may impose monetary sanctions for misuse of the discovery process on a party "or any attorney advising that conduct, or both," unless they "acted with

4

substantial justification or [ ] other circumstances make the imposition of the sanction unjust." (§ 2023.030, subd. (a).) The sanctions may cover "reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct." (*Ibid.*)

"The trial court has broad discretion in selecting discovery sanctions, subject to reversal only for abuse." (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 992-994 [trial court erred by failing to impose terminating sanctions after defendant violated discovery orders, because less severe sanctions were ineffective].) All evidentiary conflicts are resolved in favor of the trial court's ruling, which can be overturned only if it is arbitrary, capricious or whimsical. Appellants bear the burden of affirmatively demonstrating error. (*Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1224.) The issue on appeal "'is not whether the trial court should have imposed a lesser sanction; rather, the question is whether the trial court abused its discretion by imposing the sanction it chose,'" so that defendants will not "'benefit from their stalling tactics.'" (*Collisson & Kaplan v. Hartunian* (1994) 21 Cal.App.4th 1611, 1619-1620.)

We note, at the outset, that Attorney Haddad did not file objections to the referee's recommendation that sanctions be imposed against Rizk "and his counsel of record." "The failure to file a written objection to the contents of the referee's report or to properly move to set aside the report results in the waiver of the right to object to the referee's findings." (*Martino v. Denevi* (1986) 182 Cal.App.3d 553, 557.) Appellant Haddad has waived his right to challenge sanctions.

Among the sanctionable misuses of the discovery process are: disobeying a court order to provide discovery; failing to respond to an authorized method of discovery; making unmeritorious objections to discovery without substantial justification; making evasive responses to discovery; and opposing a motion to compel discovery without substantial justification. (§ 2023.010.) After defying a court order, a party "'presumptively should pay a sanction to the prevailing party.'" (*Clement v. Alegre* (2009) 177 Cal.App.4th 1277, 1286-1287; *Ellis v. Toshiba America Information Systems, Inc.*, *supra*, 218 Cal.App.4th at pp. 878-880 [sanctions may be imposed if a lawyer fails

5

to obey court orders compelling discovery, even if she personally feels justified in disobeying the orders].)

Appellants claim that the referee's second report—and the court order based on the second report—did not require George Rizk to produce his personal tax returns. As a result, they reason, there was no violation of a court order. Appellants' interpretation of the trial court's April 2014 order has no basis in logic or reality.

In his second report, the referee wrote that "defendant Rizk opposes the production of any of his personal tax records, but through his counsel acknowledges that his personal records may in fact be the only tax records for J.R. Shell after Jean's death." The referee stated that the profits of Caderex could not "be hidden behind the personal tax privacy" of the Rizks. Rizk contested the referee's findings. The trial court rejected Rizk's objections, echoing the referee's findings and adding that both of the Rizk brothers waived the taxpayer privilege by filing business returns under their tax returns, and that applying the privilege to defendant Rizk would "facilitate the taxpayer in perpetrating a fraud" in violation of public policy.

There is nothing ambiguous about the trial court's order, which directed the production of the tax returns of George Rizk for three reasons: (1) intentional waiver of the taxpayer privilege; (2) the gravamen of the lawsuit is inconsistent with the taxpayer privilege; and (3) public policy reasons. These are all valid reasons to order the production of tax documents. (*Schnabel v. Superior Court* (1993) 5 Cal.4th 704, 721.)[4]

Appellants did not comply with the court's order at CPA McGarrell's deposition. The referee, who attended the deposition, "was frankly shocked" that the tax records of George Rizk were not produced, in defiance of the court's order.

---

[4]     On page 1 of their opening brief, appellants write, "the question raised by this appeal is *not* whether the substantive discovery orders must be reversed, but whether the sanctions must be reversed." (Italics added.) This is a concession that the trial court's reasons for ordering production of Rizk's tax returns are correct.

Appellants claim that McGarrell "independently decided" not to produce tax returns at his deposition. McGarrell testified that shortly before his deposition, George Rizk "asked me for copies of his [tax] records . . . and I gave those to him." Defense counsel Mr. Haddad interjected, "But you're not here to produce tax returns for George Rizk; you're here to produce financial documents for J.R. Shell." The referee observed that appellants did not instruct McGarrell to produce the tax returns of George Rizk, so he did not bring the documents.

It was reasonable for the trial court to conclude that appellants subverted its April 2014 order by failing to instruct McGarrell to bring George Rizk's tax returns to the deposition, a point underscored by Attorney Haddad's directions to McGarrell during the deposition that "you're not here to produce tax records for George Rizk." It is also reasonable for the trial court to find that McGarrell, Rizk and defense counsel lack credibility, so that anything they say on the subject of Rizk's tax returns is not believable. The referee rejected the belated "scrivener's error" excuse (see fn. 3, *ante*) because defense counsel represented "on several separate occasions" that income for J.R. Shell is contained in George Rizk's personal tax returns. Credibility is not reassessed on appeal. (*Bateman v. Long* (1951) 105 Cal.App.2d 173, 178-179.)

Appellants contend that they had "substantial justification" for opposing the production of George Rizk's tax returns in the referee's presence, despite the court order. Appellants suggest that the referee's "consternation" arose from his inability to understand his own report, leading to the referee's "misconception" that the court's order required the production of Rizk's personal returns. As discussed above, there is nothing ambiguous about the April 2014 court order: the production of Rizk's personal tax returns was ordered, in no uncertain terms, for the three reasons listed by the court. Quoting the referee, the court stated that it is "'manifestly unfair'" to prevent plaintiff from proving damages following the improper dissolution of Caderex because the corporation's profits were "'hidden behind the personal tax privacy of Jean Rizk, George Rizk and/or his spouse.'" There is no substantial justification for defense counsel to believe that the court order excluded Rizk's personal returns.

7

It is irrelevant that neither the referee nor the court called for Rizk to produce his tax returns in the first discovery report and order. Over time, it became apparent that production of this tax information was necessary and proper, which is precisely why the court appointed the referee to monitor case developments and attend depositions.

Appellants were not deprived of notice. Plaintiff asked the referee for discovery sanctions because appellants violated a court order. The referee recommended that the court impose sanctions for appellants' violation of the April 2014 court order. When Raphael submitted the referee's third report to the trial court, he requested $7,673 in discovery sanctions. Rizk filed written opposition to the imposition of sanctions before the court ruled on the report.

Appellants complain that they were denied an "opportunity for hearing" on discovery sanctions. (§ 2023.030.) The court is not obliged to hold a hearing on the referee's report. (*Marathon Nat. Bank v. Superior Court* (1993) 19 Cal.App.4th 1256, 1259-1261.) In any event, to obtain a reversal for a procedural flaw, appellants must demonstrate not only a defect but *prejudice* arising from the error, a requirement for relief on appeal. (§ 475 [no ruling shall be reversed unless it was prejudicial]; *Reedy v. Bussell* (2007) 148 Cal.App.4th 1272, 1289 [defendants failed to demonstrate prejudicial lack of notice before terminating sanctions were imposed].) Appellants do not state in their brief that they were prejudiced by the lack of a hearing, or that they would have obtained a different result. The trial court examined its prior order to produce tax returns, and was faced with appellants' adamant refusal to comply with that order. There was no procedural error resulting in a miscarriage of justice. (Cal. Const., art. 6, § 13.)

Appellants object to the amount of sanctions imposed. The trial court is in the best position to determine what amounts are reasonably necessary to compensate a party. It is entirely proper for plaintiff to recover his referee's and court reporter's costs for McGarrell's deposition, inasmuch as appellants violated the court order directing production of Rizk's tax returns at the deposition, after the issue was litigated and resolved in plaintiff's favor. Awarding plaintiff $2,700 for a letter brief relating to appellants' continuing refusal to produce tax records was justified and reasonable.

8

## Sanctions on Appeal

Respondent Raphael filed a motion asking this Court to impose sanctions for a frivolous appeal. "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." (§ 907; Cal. Rules of Court, rule 8.276(a).) The standard is (1) whether, focusing on the subjective good faith of appellant and his counsel, the appeal was prosecuted for an improper motive, i.e., to harass the respondent or to delay the case, or (2) whether, objectively viewed, the appeal indisputably has no merit, so that any reasonable attorney would agree that it is totally and completely without merit. (*Marriage of Flaherty* (1982) 31 Cal.3d 637, 649-650.)

We have no difficulty concluding that this appeal is utterly without merit. On April 8, 2014, the court issued an order giving three reasons for requiring production of the Rizk brothers' tax returns. Subsequently, in the presence of the referee, George Rizk, his attorneys, and his CPA failed to produce the court-ordered tax documents. This necessitated a third report and yet another court hearing, to once again instruct Rizk to produce the tax returns. Appellants were sanctioned for their unjustifiable misconduct.

On appeal, appellants have the temerity to argue that the referee, a retired jurist, was unable to understand his own report or the court order based on the recommendations in his report. Appellants repeatedly and frivolously try to deflect focus from the trial court's *orders* and ask this Court to review the referee's *recommendations* to the court.[5] We review superior court orders, not referee reports. (*Doyle v. Superior Court* (1996) 50 Cal.App.4th 1878, 1884, fn. 1.) The *orders* made by the court in April and September 2014 direct production of Rizk's tax returns for clear, concise reasons. Appellants egregiously misrepresent the contents of the court's April 2014 ruling in their briefs.

---

[5] For example, appellants' reply states that "the real issue—which is whether George Rizk's personal returns were ordered produced previously in Report Nos. 1 or 2, as required to legally support sanctions." Later, they write that "Report No. 2 did not order George Rizk to produce his personal returns."

9

Appellants brought three unmeritorious writ petitions regarding the production of tax returns. They challenged the trial court's first discovery order in a writ petition that we summarily denied on January 21, 2014 (B253424). They challenged the trial court's April 2014 discovery order in a writ petition that we summarily denied on July 29, 2014 (B257589). They challenged the trial court's order to produce returns *again* in a writ petition that we summarily denied on September 30, 2014 (B258901). Appellants have made persistent unfounded contentions, which they continue in this appeal.

The conduct of Rizk and his attorneys is an intolerable display of disrespect for the judicial system and court orders. The consequences for such behavior must be harsh. Appellants' continuing refusal to produce documents despite multiple court orders can be viewed as a contempt of court. (§ 2025.480, subd. (k).) Appellants have wasted plaintiff's time, the referee's time, and the courts' time, which "is not fair to the opposing litigant who is victimized by such tactics and it is not fair to the greatly overworked judicial system itself and those citizens with legitimate disputes waiting patiently to use it. In those cases where such abuse is present, an award of substantial sanctions is proper." (*National Secretarial Service, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510, 526, fn. omitted; *In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 520.) Trial was originally scheduled for 2012 in this case. Owing to their underhanded tactics, appellants have denied plaintiff his day in court for three years.

Plaintiff has requested $16,140 for his costs and attorney fees in opposing this appeal, and for preparing his motion for sanctions. We grant his request both as compensation and to discourage like conduct in the future. (*Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 33-34.) In addition, we order sanctions of $6,000 to be paid directly by defense counsel to the clerk of this court for their diversion of court time and waste of taxpayer resources. (*In re Marriage of Gong & Kwong*, *supra*, 163 Cal.App.4th at p. 520 [where legal issues are not complex, $6,000 is an appropriate sanction]; *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 189-190; *Young v. Rosenthal* (1989) 212 Cal.App.3d 96, 135-137 [requiring an attorney to pay the appellate court $20,000 for its costs in processing frivolous appeals].)

10

## DISPOSITION

The trial court's order imposing discovery sanctions is affirmed. For bringing a frivolous appeal, George Rizk, and attorneys Sa'id Vakili and Henry Haddad are ordered to pay $16,140 to plaintiff Youssef Raphael, jointly and severally. In addition, Sa'id Vakili and Henry Haddad shall each pay $3,000 to the clerk of this court. All sanctions shall be paid no later than 15 days after the remittitur is issued by the clerk of this court.

Sa'id Vakili (SBN 176322) and Henry Haddad (SBN 100834) and the clerk of this court are *each* ordered to forward a copy of this opinion to the State Bar upon issuance of the remittitur. (Bus. & Prof. Code, §§ 6068, subd. (o)(3); 6086.7, subd. (c).)

Plaintiff Raphael is entitled to recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1)-(2).)

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

BOREN, P.J.

We concur:

CHAVEZ, J.

HOFFSTADT, J.

11